Filed 8/31/18

<u>**CERTIFIED FOR PUBLICATION**</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>RAMIRO TAPIA,<br><br>    Defendant and Appellant. | F075475<br><br>(Super. Ct. No. MCR44769A)<br><br>**OPINION** |

APPEAL from an order of the Superior Court of Madera County.  Joseph A. Soldani, Judge.

Law Office of Ricci & Sprouls and Frank P. Sprouls for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Lewis A. Martinez and Louis M. Vasquez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Appellant Ramiro Tapia pled no contest in 2012 to one count of violating Penal Code section 182, subdivision (a)(1), conspiracy, and one count of violating Health and Safety Code section 11358, planting, harvesting, or processing cannabis plants. (Undesignated statutory references are to the Penal Code.)  In 2017, Tapia filed a motion pursuant to section 1473.7 to withdraw his plea and vacate his convictions on the ground he was not informed of the actual adverse immigration consequences of his plea.  The trial court denied the motion.  Tapia appeals, contending he is entitled to the requested relief because trial counsel provided ineffective assistance of counsel.  Specifically, he faults trial counsel for failing to advise him of the precise immigration consequences of his plea and for failing to negotiate a plea bargain with no adverse immigration consequences.  We reject these contentions and affirm the trial court's order denying his motion.

## FACTUAL AND PROCEDURAL SUMMARY

Because Tapia pled no contest to the offenses, we take the facts of the offenses from the probation report.  On October 25, 2012, law enforcement officers from the Madera County Narcotic Enforcement Team, Madera Sheriff's Department, and Madera Police Department Response Unit executed search warrants at Tapia's residence on Road 26 and at a second location on Ellis Street.

At the Ellis Street property, officers found 143 live marijuana plants.  There were three medical marijuana cards, including one for Tapia, that purported to allow 90 live plants and six pounds of processed marijuana for each card holder.  Inside a wooden shed on the property were portions of marijuana plants hanging by strings and a large bucket containing freshly cut marijuana plants.  In a trailer on the property, officers found a handgun and a shotgun; the shotgun had been reported stolen in Watsonville.  The trailer also was being used as a location to dry marijuana.

2.

According to Tapia's brother, the marijuana was grown at the Ellis Street property and then taken to Tapia's residence on Road 26. Tapia was present when officers arrived to execute the warrant at the Road 26 property. Officers found the garage of the residence had been converted to a marijuana processing center. Among the items in the converted garage were six pounds of marijuana and Reynolds plastic oven bags. Six individuals were in the garage when officers arrived. Officers found a revolver and a shotgun in Tapia's bedroom closet and a rifle was in a shed on Tapia's property.

After being advised of his rights and waiving those rights, Tapia spoke with officers. He admitted the residence was his, and he was aware of the processing center in the garage. He hired the individuals in the garage to work for him clipping and packaging marijuana; he paid them in marijuana. The total weight of the marijuana recovered from the Ellis Street and Road 26 properties was 760 pounds.

A criminal complaint was filed against Tapia and codefendants on October 29, 2012. As to Tapia, the complaint alleged violations of section 182, subdivision (a)(1), conspiracy; Health and Safety Code section 11358, planting, harvesting, or processing cannabis plants; and Health and Safety Code section 11359, possession for sale of cannabis.

On November 15, 2012, Tapia was before the trial court. At the commencement of that hearing, defense counsel Craig Collins noted Tapia was "considering the offer," presumably a plea offer from the People. Collins stated Tapia was a legal permanent resident of the United States and "I want to just see how this would affect his status therein." The trial court trailed the matter to later that morning and told Collins, "just let me know when you're ready to proceed." The trial court also offered to put the matter over to another day.

After a passage of time, the matter was back on the record. Collins stated Tapia was being assisted by the Spanish-language interpreter and would be pleading to one count of conspiracy in violation of section 182 and one count of cultivation of marijuana

3.

in violation of Health and Safety Code section 11358. In exchange for his plea, the People would dismiss the charge of possession for sale in violation of Health and Safety Code section 11359 and agree to felony probation.

The trial court inquired about the "plea form," and Collins stated the Spanish interpreter had assisted Tapia with filling out the form. The plea form, entitled "Declaration Regarding Guilty Plea," bears the signatures of Tapia, the Spanish interpreter, and defense attorney Collins.

The plea form includes the statement that Tapia's attorney had explained the consequences of the plea to him and "if not a citizen, my plea may have the consequence of my deportation, exclusion from admission to the United States or denial of naturalization pursuant to the laws of the United States." Tapia initialed this statement. Above Tapia's signature at the end of the form, it states he has read each item on the form, discussed it with his attorney, and understands each item; his initials by each item is proof thereof.

During the November 12, 2012, hearing, the trial court went over each item on the plea form. Regarding the immigration consequences of the plea, the trial court stated:

> "[D]o you understand, also, if you're not a citizen of the United States and you enter a plea of guilty or no contest, it *will* result in your being deported to your country of origin and never being allowed to legally return to this country and never being allowed to become a legal citizen of this country. [¶] Do you understand this?

> "[TAPIA]: Yes." (Italics added.)

Tapia pled as agreed and the trial court ordered a probation report prepared. The probation officer noted Tapia had a prior conviction for battery. When the probation report was prepared in December 2012, Tapia was 43 years old. He informed the probation officer that he was a citizen of Mexico, he had graduated high school in Mexico, and he had completed one semester at the University of Guadalajara in Mexico. There were no holds, immigration or otherwise, identified by the probation office.

Three circumstances in aggravation were identified by the probation officer pursuant to California Rules of Court, rule 4.421. The circumstances in aggravation were identified as: (1) Tapia occupied a position of leadership in the commission of the crime (rule 4.421(a)(4)); (2) the manner in which the crime was carried out demonstrated sophistication and professionalism, as Tapia headed a marijuana cultivation, processing, and distribution operation, (rule 4.421(a)(8)); and (3) the crime involved a large quantity of contraband, 760 pounds of marijuana and 143 marijuana plants (rule 4.421(a)(10)).

Tapia was sentenced in accordance with the plea agreement on December 13, 2012.

On January 24, 2017, Tapia filed a motion pursuant to section 1473.7 to withdraw his plea and vacate his convictions. The motion alleged Tapia had left the country for a trip to Mexico, and upon reentering this country, he was detained and placed into custody. One of the exhibits attached to the motion was documentation from the Department of Homeland Security.

Tapia argued that had he known he was barred from reentry or subject to deportation under title 8 United States Code section 1226(c) because of his conviction for a crime involving a controlled substance, or if he had been advised of the immigration consequences of his plea, he would not have traveled outside the United States. Tapia also argued he never would have pled to the offenses had he known of the consequences of his plea to his status as a legal resident. In addition, the motion alleged Collins rendered ineffective assistance by failing to explain the immigration consequences of the plea to Tapia.

Among the multiple exhibits attached to the section 1473.7 motion was a document purporting to be a declaration from Tapia, but is unsigned. The unsigned declaration asserts Tapia was not involved with the cultivation or packaging of marijuana. It also states Tapia was not told his plea could lead to deportation or that the offense to which he pled was an "aggravated felony." A signed declaration from Tapia's

5.

brother and codefendant states Tapia was not involved in the marijuana cultivation and packaging operation.

The People filed written opposition to the section 1473.7 motion on February 17, 2017. Attached to the People's opposition was a copy of the Declaration Regarding Guilty Plea signed by Tapia and a declaration signed by defense counsel Collins.

Collins declared he anticipated Tapia would be convicted on all charges had he gone to trial. Tapia was considering the People's original offer, so Collins asked to trail the case to discuss with Tapia "the immigration issues involving the plea bargain." Collins averred he negotiated the best resolution possible, considering the facts and the People's position on the matter; the charge pertaining to sales or distribution of marijuana was struck.

Collins stated he advised Tapia, with the use of a Spanish-language interpreter, the plea would expose him "to deportation proceedings and other negative consequences." Collins declared it was his "custom and practice" with clients in Tapia's position to state the negative consequences included "loss of permanent resident status, preclusion from citizenship and prevention of reentry."

Furthermore, Collins stated he could not specifically recall, but it would have been unusual for Tapia to have an immigration hold at that time. Collins advised Tapia immigration officials could place a hold on him any day, and although Tapia still faced deportation if out of custody, the chance of such proceedings decreased if Tapia was out of custody. Collins negotiated a plea bargain allowing Tapia to be released from custody quickly.

Tapia filed a reply to the opposition. In the reply, he maintained he was not advised of the specific immigration consequences of his plea nor told his plea would expose him to certain deportation.

A hearing was held on the section 1473.7 motion on March 3, 2017. At the hearing, a signed copy of the declaration from Tapia was submitted. Counsel argued

Tapia should be allowed to withdraw his plea. With respect to immigration consequences, Tapia's counsel argued that when a defendant enters a plea, "there's a heightened duty of [defense] counsel to make it abundantly clear." Counsel also argued Tapia should have been told "there's no 'might' about it."

The trial court stated it had read the transcript of the plea hearing and Tapia "was right there and I was right here." The trial court had told Tapia, "you leave the country, you're not going to be allowed back." The trial court also stated it had told Tapia "you're going to be deported, you're not going to be allowed to come back to this country, and you're not going to become a legal citizen" and Tapia stated he "understood that."

The trial court also stated counsel's argument was Tapia "really didn't have any information and that's why he left the country. He had that information." The trial court opined, "Sometimes we do things" thinking "we're not going to get caught."

The People argued Tapia was "advised on the record" by the trial court as to immigration consequences and Tapia was advised by Collins of specific immigration consequences as set forth in his declaration. The People argued Tapia knew the consequences when he left the United States, and he did so believing he would "not be apprehended or he just chose to disregard his counsel's advice."

The trial court stated it had reviewed and taken into consideration "the moving papers and the declarations and the Court's file, the plea declaration and the motions and responses and responses to responses." The trial court found Tapia's defense attorney, Collins, was "very competent" and had advised Tapia of the immigration consequences.

The trial court denied the section 1473.7 motion stating the "Court does not believe that it's appropriate to allow the defendant to withdraw his plea in this matter" and Tapia had not "met [his] burden in this matter."

Tapia filed an appeal on April 10, 2017.

# DISCUSSION

Tapia argues the failure of defense counsel to advise him of the "precise …

immigration consequences" and the failure to negotiate an "immigration-safe" plea

provides sufficient basis for granting his section 1473.7 motion.

## *Section 1473.7*

Section 1473.7 was enacted in 2016 and became effective January 1, 2017. (Stats.

2016, ch. 739, § 1.) This statute provides in part:

> "(a) A person no longer imprisoned or restrained may prosecute a motion to vacate a conviction or sentence for either of the following reasons:

> "(1) The conviction or sentence is legally invalid due to a prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere.

> "(2) Newly discovered evidence of actual innocence exists that requires vacation of the conviction or sentence as a matter of law or in the interests of justice." (§ 1473.7, subd. (a).)

The statute further provides that all motions "shall be entitled to a hearing."

(§ 1473.7, subd. (d).) The moving party has the burden of establishing by a

preponderance of the evidence any of the grounds for relief specified in subdivision (a).

(*Id.*, subd. (e)(1).) In addition, the trial court must specify the basis for a grant or denial

of the motion. (*Id.*, subd. (e)(2).) An order granting or denying the motion is appealable.

(*Id.*, subd. (f).)

Section 1473.7 allows a defendant to "challenge his or her conviction based on a

mistake of law regarding the immigration consequences of a guilty plea or ineffective

assistance of counsel in properly advising the defendant of the consequences when the

defendant learns of the error postcustody." (*People v. Perez* (2018) 19 Cal.App.5th 818,

828.) "There is no requirement in the statute that the defendant had to have pled guilty

after the effective date of the statute." (*Ibid.*) Consequently, although Tapia entered his plea in 2012, he may seek to avail himself of the relief afforded by section 1473.7.

A motion asserting grounds for relief pursuant to section 1473.7, subdivision (a)(1) must be filed with "reasonable diligence" after the later of:

> "(1) The date the moving party receives a notice to appear in immigration court or other notice from immigration authorities that asserts the conviction or sentence as a basis for removal.

> "(2) The date a removal order against the moving party, based on the existence of the conviction or sentence, becomes final. (§ 1473.7, subd. (b).)

Here, Tapia was placed on formal probation for five years on December 13, 2012. One of the conditions of probation required he not be away from his residence more than 24 hours or leave the state without prior written consent from his probation officer. Tapia left the United States and went to Mexico while on probation; there is no indication in the record whether he obtained prior written permission from his probation officer. Tapia apparently returned from Mexico on March 1, 2016, and applied for admission into the United States as a "returning lawful permanent resident." A notice to appear before immigration authorities was issued. A second notice to appear before the immigration court was issued October 24, 2016, superseding the March 1, 2016, notice. Tapia filed his motion on January 24, 2017. The People have not challenged the timeliness of the section 1473.7 motion.

***Standard of Review***

Tapia does not directly address the appropriate standard of review for a section 1473.7 motion. The People assert the standard of appellate review of a section 1473.7 motion is abuse of discretion. Subsequent to the filing of briefs in this case, two appellate courts addressed this issue and determined the proper standard of review is de novo. (*People v. Ogunmowo* (2018) 23 Cal.App.5th 67, 76; see *People v. Olvera* (2018) 24 Cal.App.5th 1112, 1116.) The appellate court in *Ogunmowo* stated:

9.

"De novo review is the appropriate standard for a mixed question of fact and law that implicates a defendant's constitutional right. (*People v. Cromer* (2001) 24 Cal.4th 889, 899–902.) A defendant's claim that he or she was deprived of the constitutional right to effective assistance of counsel 'presents a mixed question of fact and law,' and we accordingly review such question independently. (*In re Resendiz* (2001) 25 Cal.4th 230, 248, abrogated in part on other grounds in *Padilla v. Kentucky* (2010) 559 U.S. 356, 370.) We accord deference to the trial court's factual determinations if supported by substantial evidence in the record, but exercise our independent judgment in deciding whether the facts demonstrate trial counsel's deficient performance and resulting prejudice to the defendant. (*In re Resendiz*, *supra*, 25 Cal.4th at p. 249.)" (*People v. Ogunmowo*, *supra*, 23 Cal.App.5th at p. 76.)

We apply this de novo standard of review in assessing the trial court's denial of Tapia's section 1473.7 motion in which he argued his conviction was legally invalid because his trial counsel, Collins, rendered ineffective assistance of counsel by failing to adequately inform him of the immigration consequences of his plea, and he was prejudiced as a result. (*People v. Ogunmowo*, *supra*, 23 Cal.App.5th at p. 76.)

***Duty to Advise of Immigration Consequences***

An immigrant convicted of an aggravated felony at any time after admission to the United States is deportable. (See 8 U.S.C. §§ 1227(a)(2)(A)(iii), 1101(a)(43).) A conviction for violating Health and Safety Code section 11358 appears to constitute an aggravated felony under federal law. (*United States v. Reveles-Espinoza* (9th Cir. 2008) 522 F.3d 1044, 1048.)

In *Padilla v. Kentucky*, *supra*, 559 U.S. 356, the United States Supreme Court held the Sixth Amendment guarantee to the effective assistance of counsel requires an attorney to advise his or her client of the potential deportation consequences of the plea, and the two-part test of deficient performance and prejudice articulated in *Strickland v. Washington* (1984) 466 U.S. 668 applied to the claim. (*Padilla*, *supra*, at p. 366.) In *Padilla*, trial counsel failed to advise the defendant he would face deportation if he pled guilty to transporting a large quantity of marijuana and instead erroneously advised the

defendant he "'"'did not have to worry about immigration status since he had been in the country so long.'"'" (*Id.* at p. 359.)

We turn now to the specific advisements given to Tapia before he entered his no contest plea.

### Specific Advisements to Tapia

Tapia contends he was not advised of the precise immigration consequences of his plea. The trial court found otherwise, and the evidence supports the trial court's finding.

We defer to the trial court's factual findings if supported by substantial evidence. (*People v. Ogunmowo*, *supra*, 23 Cal.App.5th at p. 76; *People v. Olvera*, *supra*, 24 Cal.App.5th at p. 1116.) Substantial evidence is evidence that is reasonable, credible, and of solid value. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) We do not reweigh the evidence or reevaluate witness credibility. (*People v. D'Arcy* (2010) 48 Cal.4th 257, 293.)

Although the focus of Tapia's motion is not the trial court's advisement of immigration consequences, we address that advisement in the context of assessing whether substantial evidence supports the trial court's finding Tapia was advised of the actual immigration consequences before entering his plea. The trial court provided the advisement required by section 1016.5, subdivision (a). Instead of telling Tapia his plea *may* result in deportation or exclusion of admission to the United States, the trial court notified Tapia his plea *would* result in these immigration consequences when it stated, "[I]f you're not a citizen of the United States and you enter a plea of guilty or no contest, it *will* result in your being deported to your country of origin and never being allowed to legally return to this country and never being allowed to become a legal citizen of this country." (Italics added.)

"One of the purposes of the section 1016.5 advisement is to enable the defendant to seek advice from counsel about the actual risk of adverse immigration consequences." (*People v. Patterson* (2017) 2 Cal.5th 885, 896.) After being specifically advised by the

11.

trial court his plea would lead to his deportation and denial of readmission to the United States, Tapia did not request more time to speak with counsel or further consider the appropriateness of entering a plea. (§ 1016.5, subd. (b).) Instead, when asked by the trial court if he understood, Tapia affirmatively stated he understood this advisement from the trial court.

The record and the declaration of Collins disclose Tapia had no need for a further conversation with defense attorney Collins after the trial court's section 1016.5 advisement because Tapia already had conferred with Collins regarding the specific immigration consequences to him from accepting the plea bargain. Before Collins would allow Tapia to accept the plea bargain, he stated on the record, "There's a legal permanent residence and I want to just see how this would affect his status therein." This statement from Collins appears at page 7 of the transcript of the hearing at which Tapia entered his plea; the trial court's advisement is at page 15 of the transcript.

After Collins made the statement about verifying the effect the plea bargain would have on Tapia's legal resident status, the trial court agreed to trail or continue the matter. The matter trailed, during which Collins spoke with his client, Tapia. Collins states in his declaration he specifically advised Tapia the negotiated disposition "exposed him to deportation proceedings and other negative consequences. These would include loss of permanent resident status, preclusion from citizenship and prevention of reentry, as this was my custom and practice in situations similar to … Tapia's." Collins further stated in his declaration he believed he advised Tapia that immigration officials "could put a hold on him any day, and although he still faced deportation out of custody, the chances of such proceedings decreased when not in jail."

Tapia was assisted by a Spanish-language interpreter when he spoke with Collins about the immigration consequences. A Spanish-language interpreter was used when Tapia signed the Declaration Regarding Guilty Plea and during the hearing where he received immigration advisements and entered his plea. The record therefore discloses

Tapia had the means to clearly communicate with his attorney and the trial court and to ask any question, or communicate any lack of understanding, about advisements on immigration consequences. There is no indication on the record he did so or lacked any understanding of the advisements. In fact, as to the trial court's advisement, he specifically stated on the record that he understood.

In *People v. Olvera*, *supra*, 24 Cal.App.5th 1112, the defendant signed a plea advisement that stated he assumed his plea "'*will*, now or later, result in my deportation, exclusion from admission or readmission.'" (*Id.* at p. 1115.) The defendant pled to an aggravated felony. (*Ibid.*) The appellate court upheld the denial of his section 1473.7 motion, stating an advisement the plea will have deportation consequences suffices. Tapia was similarly advised by the trial court, and defense counsel's advisement is the equivalent of the advisement in *Olvera*.

Both in his motion and his declaration, Tapia emphasizes he was not told he was pleading to an "aggravated felony," apparently because that specific term was not used. Whether the offense to which Tapia pled is classified by the federal government as an aggravated felony is not a consequence of the plea; it is simply a legal classification for certain offenses. The consequence of the plea is that the charge to which Tapia pled would lead to his deportation and would bar him from reentry if he left the United States, and Tapia was advised of these consequences.

The only evidence he was not advised of the specific immigration consequences of his plea is Tapia's own self-serving declaration, claiming he was not told of the immigration consequences. The trial court implicitly found Tapia's declaration not credible, considering the comment by Collins reflected in the reporter's transcript that Collins needed some time to determine the effect of the plea bargain on Tapia's legal permanent resident status and Collins's declaration as to the substance of his off-the-record discussion with Tapia about immigration consequences. This exchange is in

13.

addition to the trial court's advisement.  We do not reevaluate witness credibility. (*People v. D'Arcy*, *supra*, 48 Cal.4th at p. 293.)

Therefore, we uphold the trial court's finding Tapia was advised of the specific immigration consequences of his plea and the effect the plea would have on his legal resident status.  (*People v. Ogunmowo*, *supra*, 23 Cal.App.5th at p. 76.)  Consequently, counsel's performance was not deficient in this regard.

***Alternative Dispositions***

Tapia also contends Collins rendered deficient representation by failing to negotiate an "immigration safe" plea bargain.  Tapia's claim such a disposition could have been negotiated is pure speculation without support in the record.  Also lacking evidentiary support is the claim Collins did not attempt to negotiate an alternative disposition.  Collins believed Tapia would be convicted on all charges if he went to trial. Collins stated in his declaration that he negotiated the "best feasible resolution" he could, considering the facts of the case, the People's position on the matter, and Tapia's immigration status.  Tapia's speculation that another disposition could have been negotiated ""is not evidence, less still substantial evidence."" (*People v. Waidla* (2000) 22 Cal.4th 690, 735.)

Tapia does claim in his motion pursuant to section 1473.7 that he had no real involvement in the marijuana enterprise and a disposition should have been negotiated reflecting this.  In declarations attached to the motion, both Tapia and his brother, who was a codefendant, declare Tapia was not a part of the marijuana enterprise.

The evidence at the time of Tapia's arrest, however, disclosed Tapia was aware of the marijuana operation and admitted the six individuals working at the Road 26 property to process and package the marijuana were working for him.  The Road 26 property belonged to Tapia.  Tapia's brother stated at the time of the arrest the 760 pounds of marijuana and 143 live plants belonged to him, Tapia, and a third person.  Tapia's counsel stipulated to a factual basis for the plea, with Tapia present, stating Tapia

14.

conspired to grow and did grow marijuana in Madera County. This is sufficient to establish the factual basis for the plea and the substance of the offenses, and Tapia is precluded from now claiming there was no basis in fact for the plea. (*People v. Palmer* (2013) 58 Cal.4th 110, 117–119.)

As for Tapia's reliance on *Lee v. United States* (2017) __ U.S. __ [137 S.Ct. 1958] to support his claim his motion should be granted, he is mistaken. In *Lee*, the Supreme Court noted, "A defendant without any viable defense will be likely to lose at trial. And a defendant facing such long odds will rarely be able to show prejudice from accepting a guilty plea that offers him a better resolution than would be likely after trial." (*Id.* at p. ___ [137 S.Ct. at p. 1966].) The reason is that "defendants obviously weigh their prospects at trial in deciding whether to accept a plea. [Citation.] Where a defendant has no plausible chance of an acquittal at trial, it is highly likely that he will accept a plea if the Government offers one." (*Ibid.*)

Here, despite his claims to the contrary in his moving papers, the evidence at the time of trial and the Collins declaration provide substantial evidence Tapia's plea agreement offered a better resolution than Tapia was likely to achieve after trial, with respect to the criminal charges and immigration concerns. Collins advised Tapia he would likely be convicted of all counts in the complaint if he went to trial, thus the plea bargain provided a better resolution of the criminal charges. Collins also believed he advised Tapia immigration might put a hold on him any day, and the sooner Tapia was released from custody, the less likely it was he would face deportation proceedings. The probation report confirms there were no holds on Tapia at the time of entry of the plea precluding a release from custody. As such, the plea bargain allowing for a quick release from custody to avoid any immigration holds also provided a better resolution for immigration purposes.

Furthermore, in *Lee*, the defendant was prejudiced by erroneous advice regarding immigration consequences of a plea. When warned at the plea hearing his plea could

result in deportation, the defendant in *Lee* stated on the record that possible deportation would affect his decision on whether to plead to the offense. (*Lee v. United States*, *supra*, at p. ___ [137 S.Ct. at pp. 1967–1968].) Tapia made no such statement in his case during the plea hearing. When the defendant in *Lee* discussed the consequences of the plea with his attorney, the attorney affirmatively advised him, erroneously, that he would not be deported if he pled to the offense. (*Id.* at p. __ [137 S.Ct. at p. 1963].) This is not what happened in Tapia's case; there was no erroneous advice given regarding immigration consequences.

### *No Ineffective Assistance*

Substantial evidence supports the trial court's finding Tapia was advised of the immigration consequences of his plea. Tapia's self-serving claim to the contrary has no support in the record. Furthermore, there is no evidence, only speculation, that an "immigration safe" plea could have been negotiated and the trial court found there was no evidence the People would have agreed to a plea with lesser immigration consequences. Also, there was no factual basis for a plea to an offense with lesser immigration consequences. Finally, Collins's declaration states he considered Tapia's immigration status in negotiating a plea.

The facts as found by the trial court simply do not demonstrate Collins's performance was deficient. (*People v. Ogunmowo*, *supra*, 23 Cal.App.5th at p. 76; *People v. Olvera*, *supra*, 24 Cal.App.5th at p. 1116.) Consequently, Tapia cannot show he was prejudiced. (*People v. Mickel* (2016) 2 Cal.5th 181, 198.) Having failed to establish either prong—deficient performance or prejudice—Tapia has not proven ineffective assistance. (*Ibid.*)

Tapia failed to meet his burden of establishing by a preponderance of the evidence that Collins failed to advise or had misadvised him of the immigration consequences of his plea and that he therefore did not understand or knowingly accept the immigration consequences of the plea. (§ 1473.7, subds. (a)(1), (e)(1).)

16.

Because Tapia failed to meet his burden of proof to establish the elements of section 1473.7, subdivision (a)(1), the trial court did not err in denying the section 1473.7 motion.  (*People v. Mickel*, *supra*, 5 Cal.5th at p. 198.)

## DISPOSITION

The order denying the section 1473.7 motion is affirmed.


_____
PEÑA, Acting P.J.

WE CONCUR:


_____
MEEHAN, J.


_____
ELLISON, J.*

---

*Retired judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.