Filed 10/28/20  P. v. Ramirez CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ENEDINA RAMIREZ,<br><br>    Defendant and Appellant. | B296793<br><br>(Los Angeles County<br>Super. Ct. No. VA125627) |

APPEAL from an order of the Superior Court of the County of Los Angeles, Michael A. Cowell, Judge.  Affirmed.

Law Office of Gary Finn and Gary Finn for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews and Analee J. Brodie, Deputy Attorneys General, for Plaintiff and Respondent.

# I.  INTRODUCTION

Defendant Enedina Ramirez, a Mexican citizen, pleaded no contest in an "open plea" to charges of corporal injury to a cohabitant or child's parent and assault with a deadly weapon. She appeals from an order denying her subsequent motion to withdraw her plea and vacate her conviction.  We affirm.

# II.  BACKGROUND

## A.  *Underlying Conviction*

On July 9, 2012, defendant was arrested for stabbing R.R., the father of defendant's two children.[1]  According to the testimony at the preliminary hearing, on the day of the incident, defendant and R.R. resided in the same residence, but in different bedrooms.  Early in the morning of July 9, 2012, defendant walked into R.R.'s bedroom holding a knife.  The two had quarreled earlier.  R.R., who was lying on his bed, saw the knife in defendant's hand and pulled his legs up defensively, resulting in his sustaining stab wounds to both legs.  R.R. was transported to and treated at a hospital.

On August 13, 2012, the Los Angeles County District Attorney filed an information charging defendant with inflicting corporal injury on a cohabitant or child's parent (Pen Code,

---

[1]  At the time of her offenses, defendant was pregnant with the second of her and R.R.'s two children.

§ 273.5, subd. (a),[2] count one) and assault with a deadly weapon (§ 245, subd. (a)(1), count two). The information further alleged that defendant had personally used a deadly and dangerous weapon in connection with count one (§ 12022, subd. (b)(1)) and had personally inflicted great bodily injury on R.R. in connection with count two (§ 12022.7, subd. (a)).

On the first day of her scheduled trial, defendant pleaded no contest before Commissioner Michael L. Schuur (the sentencing court). Before entering her plea, defendant completed a "Felony Advisement of Rights, Waiver, and Plea Form," in which she initialed the box indicating that she understood the consequences of a no contest plea, including the possibility of deportation from the United States and exclusion from reentry. She also acknowledged that her plea was being made freely, voluntarily, and with knowledge of all matters detailed in the change of plea form.

During the change of plea hearing, defendant acknowledged that she was pleading "open"; that is, that she was pleading without a plea agreement and the sentencing court could sentence her up to the maximum possible sentence in this case.[3] Further, the sentencing court advised defendant, among other things, that: "If you are not a citizen of the United States

---

[2]     All further statutory references are to the Penal Code.

[3]     "An open plea is one under which the defendant is not offered any promises. [Citation.] In other words, the defendant 'plead[s] unconditionally, admitting all charges and exposing [her]self to the maximum possible sentence if the court later chose to impose it.' [Citation.]" (*People v. Cuevas* (2008) 44 Cal.4th 374, 381, fn.4.)

3

you will be deported, denied reentry into the country, and denied the right to become a natural citizen." When the court asked defendant if she understood the consequences of her plea, defendant answered, "Yes." Defendant then entered a plea of no contest to both counts of the information and admitted that the special allegations were true. The court found that defendant had "made a knowing, understanding, and intelligent waiver of her constitutional rights, [and] that she ha[d] been advised of the maximum sentence and the consequences of her plea . . . ." The court accepted defendant's no contest pleas and admissions of the special allegations.

At the November 5, 2012, sentencing hearing, the sentencing court noted that defense counsel had submitted letters in support of defendant.[4] The court then asked whether either side wished to be heard before the court imposed sentence. The prosecutor advised the court that the People's plea offer had been for two years' imprisonment and emphasized that defendant had engaged in a violent act with a knife. Defense counsel did not request a particular sentence, but observed that defendant did not have any prior convictions.

After the parties submitted the matter, the sentencing court listed certain factors in mitigation, including that defendant suffered from depression and had no criminal record. The court also observed, in aggravation, that "it's a very serious case when you stab somebody." The court then sentenced defendant to five years' probation, with a condition that

---

[4] The defense letters submitted at sentencing are not part of the record on appeal.

defendant serve one year in the county jail. The court then struck the great bodily injury enhancement.

B. *Motion to Withdraw Plea and Vacate Conviction*

On September 7, 2018, defendant filed a motion to withdraw her no contest plea pursuant to sections 1473.7 and 1016.5. She argued that (1) defense counsel failed to advise her adequately about the immigration consequences of her plea; (2) counsel was ineffective in failing to attempt to mitigate or defend against the adverse immigration consequences of the plea; and (3) the sentencing court did not properly advise her of the potential immigration consequences of her plea.

Defendant submitted a declaration stating, among other things, that defense counsel had not advised her that her crimes were "aggravated felonies" under the immigration laws and that she would be deported because of her convictions. Defendant additionally contended that she did not understand the immigration consequences of her plea because she was on medication—Zoloft—at the time of her plea. Finally, according to defendant, "Had [she] understood that by pleading no contest [she] would become subject to deportation and would be ineligible to apply for any type of pardon or relief in immigration court, or had [she] known that there might have been ways to plead no contest and avoid deportation, [she] never would have pled no contest to the charges against [her] but instead [she] would have taken [her] case to trial or [she] would have fought for a disposition that would not have resulted in [her] automatic deportation."

5

C.    *Hearing*

On February 21, 2019, the parties appeared before the trial court for a hearing on defendant's motion.[5]  Defendant called defense counsel as a witness and agreed to waive the attorney-client privilege as to his testimony.  Defense counsel, who had been a deputy public defender since 1997, testified that he was aware that defendant was not a United States citizen.  He discussed the prosecution's plea offer of two years with defendant and advised her that conviction on the pending charges, which were aggravated felonies, would result in defendant's deportation and denial of reentry and naturalization.

Defense counsel believed that the prosecution's plea offer was too high in light of defendant's lack of a criminal record.  He therefore sought a more favorable plea agreement for defendant.  Although he believed that defendant should proceed to trial, defense counsel ultimately asked the sentencing court whether defendant could enter an open plea to the court.

When asked why he had not specifically requested a sentence of 364 days in county jail, defense counsel responded that he had a good relationship with the bench officer who presided over the sentencing hearing and that he "was a good person to plea open to.  But I was just only going to ask [for] so much, hey, will you help us out here."  Defense counsel admitted that in retrospect, he could have requested a jail sentence of 364 days.

---

[5]    By the time of the hearing, Commissioner Shuur had retired and the matter was assigned to a different bench officer.

Defendant also testified.  During her direct examination, she testified that she had been diagnosed with depression and psychosis and had been prescribed Zoloft.  She was taking Zoloft at the time of her change of plea, which made her sleepy.  On cross-examination, she admitted that she was not diagnosed until two years after entering her plea, on July 29, 2014.

During her direct examination, and contrary to her declaration, defendant testified that she did not recall whether defense counsel discussed the immigration consequences of her plea, but believed that he did discuss aggravated felonies with her.  She initially testified that had she known she would be deported as a result of her no contest plea, she would not have entered such a plea and would have taken the case to trial.  She later admitted, however, that defense counsel advised her to proceed to trial, but she decided to enter a no contest plea because she "wanted to be at home with [her] kids for Christmas."

The trial court found the entirety of defense counsel's testimony to be credible.  The court also concluded that the People's two year plea offer was reasonable given the circumstances of defendant's crimes and defense counsel acted reasonably in seeking an open plea from the court.  In the court's view, as an experienced deputy public defender, "[defense counsel] knew that [the sentencing court] would be fair and justiciable in [its] disposition of the case and [defense counsel] was right."  Finally, the court found that defense counsel was not unreasonable in failing to ask for a sentence of 364 days because the sentencing court knew that a sentence of "364 days was better than a sentence of 365 days in terms of immigration consequences."  Further, "To say that [defense counsel] should

7

have requested 364 [days], no. That's splitting hairs." The court then recited the portions of the change of plea hearing that demonstrated defendant was advised of the immigration consequences of her plea and denied defendant's motion.

## III.  DISCUSSION

Defendant appeals from the order denying her motion to withdraw her no contest plea and vacate her conviction, contending that (1) she was not properly advised about the potential immigration consequences of her plea by the sentencing court, in violation of section 1016.5; and (2) she was entitled to withdraw her plea and have her conviction vacated pursuant to section 1473.7 because defense counsel rendered ineffective assistance by failing (a) to explain adequately the immigration consequences of her plea and (b) to request that the sentencing court sentence defendant to 364 days in custody.

A.     *Section 1016.5*

Section 1016.5, subdivision (a) "requires that before accepting a plea of guilty or nolo contendere to any criminal offense, the trial court must advise the defendant that if he or she is not a United States citizen, conviction of the offense may result in deportation, exclusion from admission to the United States, or denial of naturalization." (*People v. Totari* (2002) 28 Cal.4th 876, 879.)

We review a trial court's denial of a motion brought pursuant to section 1016.5 for abuse of discretion. (*People v. Asghedom* (2015) 243 Cal.App.4th 718, 724.) We review the

8

court's finding whether an advisement was given for substantial evidence. (*People v. Tapia* (2018) 26 Cal.App.5th 942, 951.)

Here, the trial court's finding that the sentencing court complied with section 1016.5, subdivision (a) is supported by substantial evidence, as demonstrated by the transcript of the change of plea hearing. Specifically, the court advised defendant: "If you are not a citizen of the United States you *will* be deported, denied reentry into the country, and denied the right to become a natural citizen." (Italics added.) Thus, the court properly advised defendant of the potential and actual consequences of her plea, as required by section 1016.5, subdivision (a). Defendant's argument to the contrary is meritless.

B.     *Section 1473.7*

We next consider the merits of defendant's claim that she was entitled to withdraw her plea pursuant to section 1473.7, subdivision (a)(1) which states, in relevant part: "A person who is no longer in criminal custody may file a motion to vacate a conviction or sentence for . . . the following reason[]: [¶] . . . The conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere. A finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel."

"A criminal defendant's federal and state constitutional rights to counsel (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15) include the right to *effective* legal assistance." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.) A counsel's performance is

9

judged by an objective standard of reasonableness. (*Strickland v. Washington* (1984) 466 U.S. 668, 687–688 (*Strickland*).) Determining a claim of ineffective assistance of counsel requires a court to consider the totality of the circumstances. (*Id.* at pp. 680, 695.) "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (*Id.* at p. 690.) Further, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." (*Ibid.*)

To establish that defense counsel provided ineffective assistance in advising a defendant about the immigration consequences of a plea, the defendant "must demonstrate that (1) counsel's representation fell below an objective standard of reasonableness, as judged by 'prevailing professional norms' (*Strickland, supra*, 466 U.S. at p. 688)," and (2) counsel's error was prejudicial. (*People v. Olvera* (2018) 24 Cal.App.5th 1112, 1116–1117.) The defendant "must carry [her] burden of proving prejudice as a 'demonstrable reality,' not simply speculation as to the effect of the errors or omissions of counsel." (*People v. Williams* (1988) 44 Cal.3d 883, 937.)

Defendant claims that defense counsel's representation was deficient—i.e., falling below an objective standard of reasonableness—because he (a) did not advise defendant about the immigration consequences of her plea, and (b) failed to request that the sentencing court impose a period of incarceration less than one year.[6]

---

[6]     Defendant's convictions subjected her to deportation. (8 U.S.C. §§ 1101(a)(43)(F), 1227(a)(2)(A)(iii), and

10

"Whether trial counsel performed competently, that is, 'reasonabl[y] under prevailing professional norms' (*Strickland, supra*, 466 U.S. at p. 688 . . .), presents a mixed question of fact and law.  Such questions are 'generally subject to independent review as predominantly questions of law—especially so when constitutional rights are implicated'—and 'include the ultimate issue, whether assistance was ineffective, and its components, whether counsel's performance was inadequate and whether such inadequacy prejudiced the defense.' [Citation.]" (*In re Resendiz* (2001) 25 Cal.4th 230, 248–249, abrogated on another point in *Padilla v. Kentucky* (2010) 559 U.S. 356, 370.)

### 1.     Failure to Advise

Defendant's contention that defense counsel failed to advise her about the immigration consequences of her plea is unsupported by the record.  Counsel testified that he advised defendant that she would be deported as a consequence of her plea.  The trial court found defense counsel's testimony to be credible.  (*People v. Maury* (2003) 30 Cal.4th 342, 403 ["[I]t is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends"].)  Defendant therefore cannot establish the first prong of *Strickland, supra*, 466 U.S. 668.

---

1227(a)(2)(E)(i).)  Because defendant received a sentence of one year, she was deemed an aggravated felon, which precludes her from seeking discretionary relief from removal under the statutory language.  (8 U.S.C. § 1229b(a)(3).)

2. <u>Failure to Request a Period of Incarceration of Less Than One Year</u>

Defendant next contends that defense counsel was ineffective for failing to "ask the court not to sentence [her] to 365 days or more on either count." The trial court concluded that counsel's failure to make such a request was a reasonable strategy call, one which, in the court's view, was ultimately successful as the sentencing court imposed a sentence that was favorable to defendant. We agree.

Defendant faced a potential maximum sentence of eight years' incarceration. Pursuant to section 1203, subdivisions (e)(2) and (e)(3), defendant was ineligible for probation, absent a finding that this was an unusual case in which the interest of justice would be served by a grant of probation. (§ 1203, subds. (e)(2) and (e)(3).) According to the Los Angeles County Probation Department's pre-conviction report, defendant was unsuitable for a grant of probation given the circumstances of her crime. The low term for each of defendant's crimes was two years (§§ 273.5, subd. (a), 245, subd. (a)(1)) and the special allegations subjected defendant to an additional consecutive term of one and three years in prison (§§ 12022, subd. (b)(1), 12022.7, subd. (a)). The prosecution recommended a sentence of two years' imprisonment. Under these circumstances, defense counsel was not unreasonable in pursuing a strategy that avoided requesting an unreasonably low sentence, one that suggested defendant did not appreciate the seriousness of her conduct, which, in turn, could support the imposition of an even higher sentence. That the sentencing court, after the parties had submitted on their arguments, ultimately sentenced defendant to probation with a

12

condition that she serve 365 days in jail does not change our analysis.  (See *People v. Avena* (1996) 13 Cal.4th 394, 447 [A strategy's "succe[ss] . . . is not the test of competent counsel"].)

Even if we were to assume for purposes of this opinion that defense counsel was unreasonable in failing to request a sentence of less than 365 days, defendant still cannot demonstrate prejudice.  First, there is no indication that the sentencing court would have been swayed by counsel's request and imposed a sentence less than the one it believed to be appropriate for defendant's crimes.  As the trial court found, "no one needed to tell [the sentencing court] that 364 was better than 365 in terms of immigration consequences."  (See *People v. Mack* (1986) 178 Cal.App.3d 1026, 1032 ["It is a basic presumption indulged in by reviewing courts that the trial court is presumed to have known and applied the correct statutory and case law in the exercise of its official duties"].)  To the extent defendant contends that counsel was obliged to advise the sentencing court of the details of defendant's immigration status, we disagree and note that imposing such an obligation is inconsistent with section 1016.5, subdivision (d), which expresses the Legislature's intent "that at the time of the plea no defendant shall be required to disclose his or her legal status to the court."

## IV.  DISPOSITION

The order denying the motion to withdraw the plea and vacate the conviction is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


KIM, J.


I concur:


MOOR, J.

# *PEOPLE v. ENEDINA RAMIREZ*

## *B296793*

**RUBIN, P. J. – Dissenting:**

The trial court's order now on appeal adjudicated defendant's "Notice of Motion and Motion to Withdraw No Contest Plea . . . ." At the close of the hearing, defense counsel took a different turn and asked the trial court (Judge Michael A. Cowell), "Your honor, would the court consider a nunc pro tunc reduction of each probation term on each count to 364 days?" The court replied, "No. I don't see that I could do that."[1] That is the type of question defendant's first attorney should have put to the sentencing judicial officer, Commissioner Michael Schuur.[2] Commissioner Schuur would have understood the one day difference and could have revised the probation terms before defendant would have even accepted them. It is the failure to make that request that was the ineffective assistance of counsel in this case.

---

[1] Judge Cowell was correct. Leaving aside the impropriety of one judge changing the sentence of another judge (see *In re Alberto* (2002) 102 Cal.App.4th 421, 427), a "nunc pro tunc order is generally limited to correcting clerical errors; ' "a nunc pro tunc order cannot declare that something was done which was not done." ' (*Johnson & Johnson v. Superior Court* (1985) 38 Cal.3d 243, 256 . . . .)" (*People v. Borja* (2002) 95 Cal.App.4th 481, 485.)

[2] The hearing on the motion to vacate took place on February 21, 2019. By that time, Commissioner Schuur had retired.

This appeal presents two questions. First, was there ineffective assistance of counsel when original counsel advised defendant of the immigration consequences of her no contest plea. Second, was counsel's assistance ineffective at the time of sentencing when he did not ask Commissioner Schuur to impose 364 days rather than 365 days in custody – a sentence that would have permitted defendant to seek relief from an otherwise deportable offense. I agree with the majority that counsel was not ineffective in the advice he gave defendant before she entered her plea on October 12, 2012. On the second point, I disagree with the majority. Counsel's assistance was ineffective at the time of sentencing on November 5, 2012. I would reverse and remand for a new sentencing hearing.

The majority has correctly set out the timeline of events. In summary, defendant was facing a maximum of eight years in prison for the offenses she had committed. At some point in the proceedings, the prosecution offered a plea deal for two years in state prison, which defendant did not accept. The prosecution made no further offers and defense counsel did not propose a different sentence.

What defense counsel did next was to effectively gauge what Commissioner Schuur might do if defendant pled open, in other words without an agreement on sentence. At the subsequent motion to vacate, defense counsel testified that he had a "good relationship" with Commissioner Schuur who counsel described as a "good person to plea open to. But I was only going to ask [for] so much, hey will you help us out here." Defense counsel also testified that he consciously decided not to ask Commissioner Schuur for a specific sentence. He was concerned that a low-ball proposal would not be well received, and he had

2

confidence Commissioner Schuur would impose a just sentence. Although he did not say this in so many words, implicitly counsel appears to have been satisfied that at worst the sentence would be for the two years offered by the prosecution and at best something quite less. He was right, sort of.

Commissioner Schuur imposed probation with 365 days in jail. If the Commissioner Schuur had included as a term of probation one day less – 364 days – it is unlikely that seven years later defendant would have filed a motion to vacate. Her chances of deportation would have been significantly reduced. Even if deportation proceedings were later to be commenced, under federal law defendant could have sought discretionary relief from deportation. (8 U.S.C. §§ 1101(a)(43)(F), 1227(a)(2)(A)(iii).) With a 365-day term of incarceration, her crimes became aggravated felonies for which discretionary relief was not available. (8 U.S.C. § 1229b(a)(3).)

Understandably, counsel decided to tread carefully at the sentencing hearing, not wanting to ask for too much of a reduced sentence for fear that his client would go to prison. That was a reasonable strategic decision. But once Commissioner Schuur granted probation and included 365 days of custody time, things changed dramatically. No longer was defendant facing a two year prison term. But the 365 days should have put counsel on high alert. Admittedly, attorneys are properly taught not to argue after the court has made its ruling, and Commissioner Schuur had indeed handed down his probationary sentence. Nevertheless the critical immigration consequences attached to 365 days, but not to 364, called for action by defense counsel. The risk was almost non-existent. Defendant's attorney had great confidence in Commissioner Schuur, who was lauded by Judge

3

Cowell at the hearing on the motion to vacate as one of the best criminal court judicial officers around. Commissioner Schuur was thoughtful in his choice of sentence. He did not simply adopt the two year offer by the prosecution. He was mindful of defendant's five children, and that her victim, the father of some of those children, had asked the court not to send defendant to jail. Under these circumstances, the only reasonable strategic decision was to ask Commissioner Schuur for one day less. The failure to do so was ineffective assistance of counsel.

I agree with the majority that "defense counsel was not unreasonable in pursuing a strategy that avoided requesting an unreasonably low sentence, one that suggested defendant did not appreciate the seriousness of her conduct, which, in turn, could support the imposition of an even higher sentence." (Maj. Opn., at p. 12.) But overlooked is that after the court imposed probation a request for one day less in jail neither would have suggested that defendant did not take her crimes seriously, nor would it have triggered "the imposition of an even higher sentence." No reasonable judicial officer would take such punitive action because of a last minute effort to avoid drastic immigration circumstances.

*Strickland v. Washington* (1984) 466 U.S. 668 requires the defense to establish that counsel's performance was objectively unreasonable and that defendant suffered prejudice as a result. Although I find the first element was easily satisfied, whether defendant suffered prejudice from counsel's inaction is a much closer question. The majority writes that "there is no indication that the sentencing court would have been swayed by counsel's request and imposed a sentence less than the one it believed to be appropriate for defendant's crimes." If "indication" requires an

4

affirmative statement by the sentencing court, the majority is right.  But the circumstantial evidence so to speak – from counsel's and Judge Cowell's high regard for Commissioner Schuur, to not accepting the prosecution's sentencing recommendation of two years, to the court commenting on the victim not wanting defendant to go to jail – all suggest that Commissioner Schuur would have reduced the sentence by one day.  Even Judge Cowell at the motion to vacate hearing realized the unfairness of the 365 day cut-off.  "I know that the equities are terrible in this situation, that there should be someone placed before a federal judge who has no discretion."  There is no reason to believe that Commissioner Schuur would have felt any differently.

I would reverse the order and remand for a new sentencing hearing.


RUBIN, P. J.