Filed 2/25/21  P. v. Hernandez CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B299668 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A962972-01) |
| v. | |
| MINOR HERNANDEZ, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, David Herriford, Judge.  Affirmed.

Tashjian Law and Vatche D. Tashjian for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Zee Rodriguez, Steven D. Matthews and Paul S. Thies, Deputy Attorneys General, for Plaintiff and Respondent.

* * * * * *

Minor Hernandez (defendant) filed a motion to vacate his nearly 30-year-old plea to felony drug possession. The trial court denied his motion. We conclude there was no error and affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

#### A. *Defendant's background*

Defendant was born in El Salvador. He immigrated to the United States with his mother and sister in 1980 when he was 11 years old.

#### B. *Defendant's criminal conduct in 1988*

In January 1988, while 18 years old, defendant possessed a small amount of cocaine tucked in a dollar bill in his wallet. He was arrested.

#### C. *Prosecution, plea and disposition*

The People charged defendant with possessing a controlled substance (Health & Saf. Code, § 11350), as a felony. Defendant was initially released from custody on his own recognizance as part of a pre-plea diversion program. After the trial court terminated the diversion program, the People resumed their prosecution. In October 1989, defendant pled guilty to the felony drug possession count in exchange for a probationary sentence with no further time in custody. Although the reporter's transcript of the plea colloquy is no longer available, the court's docket reflects that the trial court advised defendant that his plea could subject him to adverse immigration consequences.

## II. Procedural Background

### A. *Defendant's motion for relief*

On February 20, 2019, defendant filed a motion to vacate his 1989 plea under Penal Code section 1473.7[1] on the ground that his attorney never advised him of the immigration consequences of his plea.

In a declaration accompanying his motion and in testimony he provided at the evidentiary hearing in support of his motion, defendant stated that (1) he discussed whether to accept the People's plea offer for a probationary sentence with his attorney while he was in a jail cell, and his attorney (a) "never asked [defendant] about [his] immigration status," (b) never "advised [him] of any immigration consequences" flowing from the plea offer, and (c) did not "present[] . . . any alternative pleas that would have been immigration safe" (that is, pleas that would have had fewer adverse immigration consequences); (2) the trial court did not advise him of the possible immigration consequences of his plea, or if it did, defendant did not recall such an advisement; and (3) if he had known that accepting the People's plea offer would have had adverse immigration consequences, he "would not have accepted the plea" and would have instead gone to trial or "negotiated an immigration safe plea."

### B. *Ruling on motion*

The trial court denied defendant's motion for relief.

The court concluded that defendant did not "me[et] his burden" of establishing entitlement to relief under section 1473.7. Specifically, the court rejected as not credible defendant's

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

testimony his attorney had never advised him of the immigration consequences of his plea. The court did not question defendant's sincerity, but instead found that defendant's recollection of the plea was incomplete and that "what he does remember seems to be contradicted by the [portions of] the record that we do have." In support of its finding, the court pointed to (1) defendant's insistence that he was in custody at the time he entered his plea, when the court's records showed he was not; (2) defendant's outright denial and, in the alternative, his inability to recall whether *the trial court* had advised him that his plea could have immigration consequences, when the court's records showed he was so advised; and (3) defendant's inability to remember whether his attorney was a man or a woman. "If [defendant] can't even remember whether his attorney was a male or a female," the court observed, "how much weight can [the court] put on his memory regarding the circumstances of the plea?" The court further found that defendant had failed to prove that he had been prejudiced by his attorney's failure to negotiate an immigration-safe plea because defendant admitted his guilt of the charge to his lawyer and "there really would not be any other immigration-friendly disposition available" given that the charge was a felony without any lesser included offenses.[2]

### C.  *Appeal*

Defendant filed this timely appeal.

---

[2]    The court also determined that it lacked the authority under section 1473.7 to grant defendant relief "in the interests of justice" absent proof—which was lacking here—that he had misunderstood the immigration consequences of his plea. Defendant does not assail this determination on appeal.

4

## DISCUSSION

Defendant argues that the trial court erred in denying his motion for relief under section 1473.7. Among other things, that section empowers a trial court to vacate a conviction as "legally invalid" if (1) the defendant was unable "to meaningfully understand . . . the actual or potential adverse immigration consequences of a plea," and (2) the defendant's misunderstanding was prejudicial to his decision to enter the plea. (§ 1473.7, subd. (a)(1); *People v. Camacho* (2019) 32 Cal.App.5th 998, 1011-1012 (*Camacho*).) This showing may be—but does not have to be—established by proving that the defendant's counsel was constitutionally ineffective. (§ 1473.7, subd. (a)(1) ["A finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel"]; *People v. Mejia* (2019) 36 Cal.App.5th 859, 871 (*Mejia*) [so noting].) As the moving party, the defendant bears the burden of showing the legal invalidity of his prior conviction by a preponderance of the evidence. (§ 1473.7, subd. (e)(1); *Camacho*, at p. 1005.) We independently review a trial court's ruling that a conviction is legally invalid when it is based on the constitutional ineffectiveness of counsel; we review its ruling on any other basis for an abuse of discretion. (*People v. Ogunmowo* (2018) 23 Cal.App.5th 67, 76 (*Ogunmowo*); *People v. Vivar* (2019) 43 Cal.App.5th 216, 224 (*Vivar*).) No matter what the basis, however, we review the trial court's factual findings solely to assure they are supported by substantial evidence in the record. (*Ogunmowo*, at p. 76.)

The trial court denied defendant's motion on two grounds— namely, that defendant did not prove (1) his lack of understanding of the immigration consequences of his plea due to

5

his counsel's failure to advise him of those consequences, or (2) he would have acted differently had he known those consequences.

## I. Failure to Prove a Lack of Understanding of Immigration Consequences Due to Counsel's Failure to Advise

The trial court's determination that defendant failed to prove a lack of understanding of the immigration consequences of his plea rests on the court's finding that defendant's testimony to that effect was not to be credited because defendant's recollection of his 1989 plea colloquy and the events preceding it was both incomplete and inconsistent with the available record. This was a credibility finding. (*People v. Lopez* (2018) 5 Cal.5th 339, 352 ["'Inconsistencies in testimony and a failure to remember aspects of the subject of the testimony. . . present questions of credibility for resolution by the trier of fact'"], quoting *People v. Mincey* (1992) 2 Cal.4th 408, 444.) Because "[i]t is up to the trial court to determine whether [a] defendant's assertion[s in support of his section 1473.7 motion are] credible" (*Vivar, supra,* 43 Cal.App.5th at p. 229), we must decline defendant's implicit invitation to second guess the trial court's credibility finding, particularly where, as here, that finding is based upon the court's evaluation of defendant's in-person testimony and not merely written testimony set forth in a declaration. (*People v. Tapia* (2018) 26 Cal.App.5th 942, 953 ["We do not reevaluate witness credibility"]; *Ogunmowo, supra,* 23 Cal.App.5th at p. 79 [granting "deference" to trial court's "credibility determinations" when based on "live testimony" rather than "written declarations"].)

Nor is there any basis to question the court's credibility finding on the limited grounds that disbelieving defendant leads to a result that is physically impossible or inherently improbable (see *People v. Prunty* (2015) 62 Cal.4th 59, 89) because many

6

portions of defendant's testimony were inconsistent with the available record and with defendant's litigation position. For example, defendant claimed that he had no Spanish-language interpreter at the plea and acknowledged understanding his rights at his plea only because his attorney told him to say, "yes." But such egregious defects with the colloquy would have wholly invalidated his plea on grounds unrelated to immigration consequences (see *People v. Aguilar* (1984) 35 Cal.3d 785, 790; Cal. Const., art I, § 14), yet defendant did not seek relief on those grounds for 30-plus years. In sum, the trial court's finding that defendant's recollection was not credible left defendant with *no* competent evidence to support his claim that his counsel failed to advise him of the immigration consequences of his plea, and hence no basis for relief under section 1473.7—whether due to ineffective assistance of counsel or otherwise.

## II.    Lack of Prejudice

Even if we ignore the trial court's finding that defendant provided no credible evidence that he lacked a meaningful understanding of the immigration consequences of his plea, the court was still correct to deny defendant's motion for relief under section 1473.7 because the court did not abuse its discretion in determining that defendant had also not established he was prejudiced by his lack of understanding.

To establish prejudice arising from a failure to understand the immigration consequences of a plea, a defendant must show that ""it is 'reasonably probable' that [he] would not have pleaded guilty if properly advised.""" (*People v. Martinez* (2013) 57 Cal.4th 555, 563; accord, *Lee v. United States* (2017) 137 S.Ct. 1958, 1965 (*Lee*) [defendant must "demonstrat[e] a 'reasonable probability that, but for [this lack of understanding], he would

7

not have pleaded guilty and would have insisted on going to trial'"].)  However, a defendant's "post hoc assertions . . . about how he would have pleaded but for [his lack of understanding]" are insufficient to establish prejudice absent "contemporaneous evidence" that "substantiate[s] [the] defendant's [subsequently] expressed preferences."  (*Lee*, at p. 1967.)  Such evidence includes: (1) the likelihood that defendant would prevail at trial (because a case with overwhelming evidence ostensibly provides strong incentive to enter a plea notwithstanding the immigration consequences), (2) the comparative punishment defendant faced after a plea vis-à-vis after a trial (because a greater dichotomy in potential sentences ostensibly provides strong incentive to enter a plea notwithstanding the immigration consequences), and (3) whether the defendant, contemporaneous with the plea, expressed that immigration consequences were important to his decision-making process (because the absence of such contemporaneous statements ostensibly shows that the immigration consequences did not matter to his decisional calculus).  (*Id.* at pp. 1966-1967.)

Here, all we have is defendant's "post hoc assertion" that he would not have pled guilty had he known about the immigration consequences of his plea.  Defendant did not carry his burden of providing any contemporaneous evidence to substantiate that assertion.  He candidly admitted—to both his lawyer in 1989 and to the trial court in 2019—that he did, in fact, knowingly possess the cocaine he was accused of knowingly possessing, so it was unlikely he would prevail at trial; he therefore had a strong incentive to plead guilty notwithstanding the immigration consequences of that plea.  The comparative punishment he faced—a three-year prison sentence versus a probationary

sentence—was a sufficiently great dichotomy to provide a strong incentive to plead guilty notwithstanding the immigration consequences, particularly in light of defendant's admission that he "wanted to be out" of custody. And defendant was aware of his immigration status but did not raise any concerns about that status with his attorney, which tends to undercut his assertion in 2019 that his immigration status was important to him at the time of his plea. (Cf. *Ogunmowo*, *supra*, 23 Cal.App.5th at p. 79 [contemporaneous evidence present where defendant "sought his attorney's counsel about immigration consequences before entering his guilty plea"].)

Defendant responds that his case is just like *Camacho*, *supra*, 32 Cal.App.5th 998 and *Mejia*, *supra*, 36 Cal.App.5th 859. We disagree on two grounds.

First, *Camacho* and *Mejia* are factually distinguishable. In both *Camacho* and *Mejia*, the record contained "compelling" evidence that the defendant would not have pled guilty despite the possibility of removal from the United States—namely, that the defendant in each of those cases had a spouse and a young child at the time of the plea from whom he would not want to be separated. (*Camacho*, *supra*, 32 Cal.App.5th at pp. 1011-1012; *Mejia*, *supra*, 36 Cal.App.5th at p. 872.) Although defendant is now married with offspring, at the time of his plea in October 1989, he was a single 19-year-old with no children. The "compelling" facts in *Camacho* and *Mejia* are absent here.

Second, we are reviewing the trial court's finding of no prejudice solely for an abuse of discretion, and that finding is valid under this more deferential standard of review. We are reviewing solely for an abuse of discretion because defendant did not establish that his attorney was *constitutionally* ineffective.

9

Defendant's claim of constitutional ineffectiveness is based on his allegations that his lawyer (1) did not ask him about his immigration status, (2) did not inform him of the immigration consequences of his plea, and (3) did not negotiate an immigration-friendly disposition. An attorney provides constitutionally ineffective assistance if (1) his representation was deficient, and (2) prejudice flows from that deficient representation. (*Strickland v. Washington* (1984) 466 U.S. 668, 687.)

The first two allegations, even if true, did not constitute deficient performance in 1989 because, at that time, defense counsel had a more limited duty not to misadvise a defendant regarding the immigration consequences of his plea. (*In re Resendiz* (2001) 25 Cal.4th 230, 240, 247 (*In re Resendiz*), abrogated in part on other grounds in *Padilla v. Kentucky* (2010) 559 U.S. 356, 370 (*Padilla*); *People v. Soriano* (1987) 194 Cal.App.3d 1470, 1481-1482 (*Soriano*).) The duty to investigate and advise a defendant regarding the immigration consequences of his plea did not arise until the 2010 decision in *Padilla, supra*, 559 U.S. 356, and *Padilla* is not retroactive (*Chaidez v. United States* (2013) 568 U.S. 342, 344, 357-358). Citing *Soriano* and *People v. Barocio* (1989) 216 Cal.App.3d 99 (*Barocio*), defendant responds that the *California* courts obligated defense counsel to investigate and to provide advice regarding immigration consequences as far back as 1987. Although those cases contain language that supports defendant's contention, that language is dicta that sweeps beyond *Soriano*'s actual holding, which deals with a *misadvisement*—namely, the defense attorney gave a "pro forma" or "formulaic" "caution" that a negotiated sentence may have immigration consequences when that sentence actually

"made [the defendant] deportable."  (*Soriano*, at pp. 1480-1482; *Barocio*, at p. 107 [observing how "*Soriano* can be limited to its facts"].)  We decline to give effect to *Soriano*'s dicta when that dicta makes *Soriano* an outlier among pre-*Padilla* case law.  (*In re Resendiz*, at p. 247 [recognizing "ineffective assistance claims based on erroneous immigration consequences advice"].)

Defendant's third allegation—that his lawyer was ineffective for failing to negotiate an immigration-friendly disposition—might constitute deficient performance, but is not prejudicial unless and until the defendant "identif[ies]" an "immigration-neutral disposition to which the prosecutor was reasonably likely to agree."  (*People v. Olvera* (2018) 24 Cal.App.5th 1112, 1118; *People v. Perez* (2018) 19 Cal.App.5th 818, 830-831.)  The trial court found no such disposition existed, and defendant does not dispute that finding on appeal; instead, he vacillates between speculating that "many different dispositions" exist and frankly acknowledging that "we do not know if an immigration safe bargain would have been forthcoming."

Because defendant's claim for relief is based solely on non-constitutional grounds, our review is limited to asking whether the trial court abused its discretion in finding that defendant had failed to establish he would not have entered a plea had he known of the immigration consequences of that plea.  If *Camacho* and *Mejia* are factually distinguishable when we employ de novo review, those two cases are not any more compelling under the more deferential abuse of discretion review.

11

## DISPOSITION

The order is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT

We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ