Filed 4/16/21  P. v. Bohmwald CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>LINDSAY BOHMWALD,<br><br>Defendant and Appellant. | B300743<br><br>(Los Angeles County<br>Super. Ct. No. NA068801) |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County, Laura L. Laesecke, Judge.  Affirmed.

Sarvenaz Bahar, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Matthew Rodriguez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy

Attorney General, and Rama R. Maline, Deputy Attorney General, for Plaintiff and Respondent.

## INTRODUCTION

In 2006 Lindsay Bohmwald, a native of Venezuela, pleaded no contest to grand theft of access card information, a violation of Penal Code section 484e, subdivision (d).[1]  Twelve years later, in 2018, Bohmwald filed a motion under section 1473.7 to vacate her conviction and withdraw her plea.  Bohmwald argued her attorney in 2006 did not inform her of the immigration consequences of her plea, which "damage[ed] her ability to understand or defend against the adverse immigration consequences of her plea."

The superior court denied the motion.  The court ruled Bohmwald did not meet her burden to show by a preponderance of the evidence she was entitled to relief under section 1473.7.  Bohmwald appeals, contending the court applied an incorrect legal standard, failed to make a finding on whether her attorney in 2006 properly advised her, and erred in concluding she did not satisfy the requirements of the statute.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *2006: Bohmwald Pleads No Contest to a Felony*

In 2006 police arrested Bohmwald for driving a stolen car and having in her possession checks that did not belong to her. The People charged Bohmwald with receiving or concealing stolen property, in violation of section 496, subdivision (a), and acquiring or retaining possession of access card account

---

[1]     Statutory references are to the Penal Code.

2

information of another person with the intent to use it fraudulently, in violation of section 484e, subdivision (d).[2]

At an early disposition hearing, Bohmwald's attorney informed the court that Bohmwald wanted to plead no contest to violating section 484e, subdivision (d). The prosecutor stated the terms of the plea agreement: The court would place Bohmwald on formal probation for three years, and Bohmwald would perform 60 days of community service and receive credit for the time she had served in custody. Before the court accepted Bohmwald's plea, the prosecutor confirmed with her that she wanted to proceed with her plea and asked Bohmwald a series of questions. The prosecutor asked Bohmwald if she had an opportunity to discuss her constitutional rights with her attorney, if she understood those rights, and if she understood she had the rights to a jury trial, to confront and cross-examine witnesses, to present a defense and testify in her defense, to use the subpoena power of the court, and to not incriminate herself. Bohmwald answered "yes" to each of these questions.

After Bohmwald affirmed that she wanted to waive her constitutional rights, the prosecutor admonished Bohmwald: "There are certain consequences as a result of your plea. If you are on probation or parole in any other matters, your plea today will result in a violation of that probation or parole. You could spend additional time in custody. If you are not a citizen of the United States, your plea today will result in your deportation,

---

[2] "[A]ccess card information [is] a term encompassing information related to credit and debit cards, bank accounts, and similar financial devices." (*People v. Liu* (2019) 8 Cal.5th 253, 255-256.)

3

denial of naturalization and denial of reentry into the United States."  The prosecutor asked, "Do you understand both of those things, Ms. Bohmwald?"  Bohmwald answered, "Yes."  The prosecutor informed Bohmwald of the maximum term of imprisonment Bohmwald would face if she violated the terms and conditions of her probation, of her obligation to pay restitution, and that she would have a felony conviction on her record.  The prosecutor asked Bohmwald, "Do you understand?"  Bohmwald answered, "Yes."

Following the prosecutor's admonitions and Bohmwald's responses affirming her understanding of each admonition, Bohmwald pleaded no contest to violating section 484e, subdivision (d).  The trial court found Bohmwald's waivers and plea "were knowingly, intelligently, and freely made with an understanding of the consequences."  The court found Bohmwald guilty of violating section 484e, subdivision (d), and dismissed the charge under section 496, subdivision (a), "pursuant to the plea agreement."

B.    *2007: Bohmwald Pleads No Contest to Another Felony*

Sixteen months later, in 2007, police arrested Bohmwald after finding stolen property in her car.  Bohmwald pleaded no contest to a felony charge of violating section 496, subdivision (a).  Bohmwald also pleaded no contest to a misdemeanor charge of grand theft (§ 487, subd. (a)) in another case.

4

C.    *2018:  Bohmwald Files a Motion Under Section*
        *1473.7 To Vacate Her 2006 Conviction*

In 2018 Bohmwald filed a motion under section 1473.7 to vacate her 2006 conviction.  Bohmwald argued that her court-appointed attorney in 2006 did not advise her of the immigration consequences of her plea and did not bargain with the prosecutor for an "immigration safe plea," that she "was deprived of effective assistance of counsel," and that "she would not have accepted her defense attorney's recommendation to plea to a violation of . . . [section] 484e, [subdivision] (d), as a felony had she known it would preclude her from obtaining US Citizenship and lead to deportation with no ability to return to the United States."[3]

Bohmwald submitted a declaration in support of her motion stating that she was born in Venezuela, that when she was two years old her parents brought her to the United States, and that she obtained her green card in 2004.  According to Bohmwald, after the police arrested her in 2006, she spent 10 days in custody and met her court-appointed attorney for the first time on the

---

[3]    Bohmwald also filed a motion under section 1016.5, arguing that the trial court in her 2006 case failed to advise her of the immigration consequences of her plea, which "prejudiced" her.  "[S]ection 1016.5 requires that before accepting a plea of guilty or nolo contendere to any criminal offense, the trial court must advise the defendant that if he or she is not a United States citizen, conviction of the offense may result in deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." (*People v. Martinez* (2013) 57 Cal.4th 555, 558; see § 1016.5, subd. (a).)  It does not appear the superior court ruled on the motion under section 1016.5, and Bohmwald does not argue that her 2006 conviction should be vacated because the trial court failed to advise her of the immigration consequences of her plea under section 1016.5.

day she entered her no contest plea. She stated her attorney never spoke to her about the immigration consequences of her plea, did not inquire about her immigration status, and did not bargain with the prosecutor for an "alternate offer" or "an immigration safe plea." Bohmwald assumed her attorney did not ask her about her immigration status because "most people assume[ed] [she was] Caucasian due to [her] light complexion, the sound of [her] name, and [her] ability to speak perfect English." Bohmwald said that, had her attorney advised her of the "devastating immigration consequences upon entering this plea," she "would have sought another alternative plea and/or taken [her] case to trial. Under no circumstances would [she] have agreed to accept a deal that would strip [her] of [her] ability to remain" in the United States. Bohmwald explained that, when she applied for United States citizenship in 2018, she learned her 2006 felony conviction precluded her from becoming a citizen and subjected her to "removal/deportation, permanent banishment from the United States, and exclusion from admission."

At the hearing on the motion, Bohmwald repeated most of the assertions in her written declaration. On cross-examination, Bohmwald testified she did not recall the prosecutor asking her questions before the court accepted her plea or advising her of her right to a jury trial and the immigration consequences of her plea. When the prosecutor at the hearing asked Bohmwald questions about the stolen checks and other aspects of the underlying crime, counsel for Bohmwald objected the questions were argumentative and beyond the scope of the motion. The court overruled the objections, stating that the questions were

6

"testing her credibility" and that "it's interesting to the court as to what she does and does not remember."[4]

In response to questions by the superior court, Bohmwald stated that she did not remember the prosecutor or the trial court in 2006 advising her of her right to confront and cross-examine witnesses, but that she did remember that either the prosecutor or the court told her she had the right to remain silent. Bohmwald testified the plea proceeding "was really fast" and "it wasn't really explained, especially immigration." The court stated, "I'm trying to . . . find out what you remember, though."

Bohmwald also testified that, a little more than one year after her 2006 plea, the police pulled her over as she was driving, searched her car, and found a bag containing certain items that did not belong to her. Bohmwald confirmed she pleaded no contest to receiving stolen property in 2007.

Counsel for Bohmwald asked the court "to take into consideration the individual's subjective beliefs at the time of plea" and to "interpret those [beliefs through] the lens of the interest of justice." Counsel for Bohmwald argued that in 2006 Bohmwald was 19 years old and that the immigration issue "wasn't crossing her mind." Counsel for Bohmwald also stated that the convictions in the 2007 cases had been vacated under section 1016.5.

The prosecutor asked the court "to make a credibility determination against" Bohmwald because the transcript of the 2006 plea proceedings showed that "she was specifically advised of the immigration consequences" and that Bohmwald said "yes" when asked if she understood. The prosecutor suggested that Bohmwald's ability to understand most of the advisements of her

---

[4]     Bohmwald denied the stolen checks and the bag containing the checks belonged to her.

7

constitutional rights and the "things that occurred during the plea" hearing, but not the advisement of the immigration consequences of her plea, made her testimony "very suspect." The prosecutor argued that Bohmwald's testimony was "not credible and not trustworthy" and that, because "she admitted she went to high school [and] spoke perfect English, it is apparent . . . she knew the consequences of her plea."

The court considered Bohmwald's testimony, reviewed the facts of the case, and stated, "In all candor this is probably one of the hardest cases I've had to deal with in a long time." Addressing Bohmwald, the court stated that the statute put the court "in a really bad position" as "the gatekeeper of what happens to you and your family," but that the court had to base its decision "on what the law is." After finding that Bohmwald's testimony about what she remembered was not accurate, the court ruled Bohmwald had not met her burden to show by a preponderance of the evidence that the court should vacate her conviction. The court denied the motion "without prejudice," and Bohmwald timely appealed.

## DISCUSSION

A.   *The Superior Court Did Not Apply an Erroneous Legal Standard*

Bohmwald contends "the trial court denied [her] motion because it held that she had an affirmative duty to ask her counsel to advise her on the immigration consequences of her plea," a duty that "[n]either the statute nor any of the cases interpreting it" requires. The record does not support Bohmwald's contention.

### 1.     *Relevant Proceedings*

The superior court made several comments at the hearing to explain its reasons for denying Bohmwald's motion to vacate her conviction under section 1473.7. The court recognized that Bohmwald had "every reason now to be telling" the court she did not understand the consequences of her plea. The court also stated it considered what Bohmwald remembered and what the plea transcript showed the prosecutor told her ("You will be deported"). The court pointed out that, two years before her 2006 conviction, Bohmwald knew her immigration status when she obtained her green card. The court stated that, when the prosecutor told Bohmwald that she would be deported, she should have taken "some responsibility for that, and [said], 'Wow, I didn't know that. . . . Wait, I want to talk to my attorney. I have questions.'" The court said that Bohmwald instead stated, "I understand."

The court stated that Bohmwald made some "bad decisions" in 2006, that she "wanted out of custody," and that the plea "was [her] way out." The court said it understood why Bohmwald "took this deal": Had she "gone to trial, [she] definitely would have been deported then," and thus there were "some advantages to being released immediately." The court addressed Bohmwald: "If I have to look back and try[ ] to encapsulate what your life was in 2006, I think you were making some decisions that you personally weren't that concerned about being deported, or you would have stopped committing crimes."

Finally, the court commented on Bohmwald's testimony: "I am not . . . saying that you are a liar. But I don't think that you accurately remember what your attorney might have told you about immigration consequences. You don't have the benefit of her testimony. You can't just assume that you're right and she didn't. . . . But in looking at what you do remember and what you

9

don't remember, I am not sure that you are accurate when you are saying . . . that she did not advise you of your consequences." The court stated that "maybe" Bohmwald's attorney "skip[ped the] part" about immigration consequences, but that Bohmwald "had a chance to ask her, and . . . [she] didn't do it on the other cases either."

### 2. *The Court Did Not Condition Bohmwald's Entitlement to Relief on Whether She Sought Advice from Her Attorney*

Bohmwald argues the superior court "condition[ed]" her entitlement to relief under section 1473.7 on whether she asked her attorney about the immigration consequences of her plea. Bohmwald focuses on two remarks the court directed to her at the hearing: "But you had a chance to ask [your attorney], and you didn't do it on the other cases either," and "I don't know what [your attorney] told you, but it's the responsibility of you and your attorney." The record does not support Bohmwald's interpretation of these comments.

In the context of the entire colloquy, the two remarks reflect the court's rationale for questioning Bohmwald's recollection of the plea proceedings, not a condition for granting relief under section 1473.7. The court found Bohmwald's testimony was not "accurate." The court stated that, after Bohmwald heard an admonition from the prosecutor that she "'will be deported,'" the court expected Bohmwald would have asked to speak to her attorney; instead, Bohmwald stated she understood the immigration consequences of her plea. Bohmwald's failure to ask her attorney about immigration consequences was one of the reasons the superior court did not credit her testimony, not something the court required her to have done before she was entitled to relief. The court denied

10

Bohmwald's motion because the court found she failed to meet her burden "to show that [her] plea should be vacated under the law."

      B.     *The Evidence Does Not Compel a Finding in Bohmwald's Favor*

      1.     *Applicable Law and Standard of Review*

Section 1473.7, subdivision (a), provides in pertinent part: "A person who is no longer in criminal custody may file a motion to vacate a conviction or sentence for any of the following reasons: [¶] (1) The conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere. A finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel." (See *People v. Camacho* (2019) 32 Cal.App.5th 998, 1009 ["Defendant was required . . . to show that one or more of the established errors were prejudicial and damaged his 'ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of [his] plea'"].) "'[S]ection 1473.7 allows a defendant, who is no longer in custody, to challenge his or her conviction based on a mistake of law regarding the immigration consequences of a guilty plea or ineffective assistance of counsel in properly advising the defendant of the consequences when the defendant learns of the error postcustody.'" (*People v. Jung* (2020) 59 Cal.App.5th 842, 854; see *People v. DeJesus* (2019) 37 Cal.App.5th 1124, 1130.)

As the moving party, the defendant has the burden to show "by a preponderance of the evidence that the plea was legally

11

invalid due to prejudicial error." (*People v. DeJesus, supra,*
37 Cal.App.5th at p. 1133; see § 1473.7, subd. (e)(1).) "[T]o
establish a 'prejudicial error' under section 1473.7, a person need
only show by a preponderance of the evidence: (1) he did not
'meaningfully understand' or 'knowingly accept' the actual or
potential adverse immigration consequences of the plea; and
(2) had he understood the consequences, it is reasonably probable
he would have instead attempted to 'defend against' the charges."
(*People v. Mejia* (2019) 36 Cal.App.5th 859, 862; see *People v.
Bravo* (2020) 58 Cal.App.5th 1161, 1170 [a defendant can show
prejudice by convincing the court that he or she ""would have
chosen to lose the benefits of the plea bargain despite the
possibility or probability deportation would nonetheless follow""],
review granted Mar. 24, 2021, S266777.)

Some courts have held the standard of review for a ruling
on a motion under section 1473.7 where the defendant seeks
relief based on statutory error is abuse of discretion.[5] (See, e.g.,
*People v. Perez* (2020) 47 Cal.App.5th 994, 997; *People v. Vivar*
(2019) 43 Cal.App.5th 216, 224, review granted Mar. 25, 2020,
S260270;[6] *People v. Rodriguez* (2019) 38 Cal.App.5th 971, 977.)

---

[5]     Bohmwald states she "is *not* basing her claim for relief on
the ineffective assistance of her plea counsel and is not
contending that counsel was ineffective."  Rather, Bohmwald
states her motion under section 1473.7 is based on "one or more
prejudicial errors" that "damaged her ability to understand or
defend against the actual or potential adverse immigration
consequences of her plea."

[6]     The Supreme Court granted review to consider whether the
court of appeal erred in ruling the defendant failed to
demonstrate prejudice within the meaning of section 1473.7 from

12

Under this standard, "[t]he trial court's factual findings are reviewed under the substantial evidence standard while the trial court's legal conclusions are reviewed de novo. . . . [¶] . . . The appellate court does not reassess witness credibility but defers to the trial court's credibility determinations." (*People v. Jung*, *supra*, 59 Cal.App.5th at p. 853.)

But where, as here, "'the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals, it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment. . . . [¶] Thus, where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding."'" (*Dreyer's Grand Ice Cream, Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 838; accord, *St. Mary & St. John Coptic Orthodox Church v. SBC Ins. Services, Inc.* (2020) 57 Cal.App.5th 817, 828-829; see *In re R.V.* (2015) 61 Cal.4th 181, 201 [where a party fails to meet its burden on an issue in the trial court, "the inquiry on appeal is whether the weight and character of the evidence . . . was such that the [trial] court could not reasonably reject it"]; see, e.g., *People v. Skinner* (1986) 185 Cal.App.3d 1050, 1059 [because insanity is an affirmative defense, the defendant has the burden to prove it by a preponderance of the evidence,

_____

trial counsel's failure to properly advise him of the immigration consequences of his plea.

and "before we can overturn the trier of fact's finding to the contrary, we must find as a matter of law that the court could not reasonably reject the evidence of insanity"]; see also *In re Dennis* (1959) 51 Cal.2d 666, 674 [a jury finding that rejects a defense of insanity should be reversed on appeal only when "the evidence is uncontradicted and entirely to the effect that the accused is insane"].)

### 2. *Bohmwald Has Not Shown the Superior Court Erred in Denying Her Motion*

Bohmwald argues she "established that her plea counsel's errors damaged her ability to understand, defend against or knowingly accept the adverse immigration consequences of her plea." Bohmwald cites her testimony that her attorney failed to discuss immigration consequences with her and that "she had no idea at the time of her plea that her plea would have any impact on her immigration status." Other evidence in the record, however, refuted Bohmwald's assertions, including the transcript of the plea hearing, which showed the prosecutor specifically warned her that, if she was not a citizen of the United States, her plea would result in deportation, denial of naturalization, and denial of reentry into the United States. When asked at the plea hearing if she understood the admonition, Bohmwald, who said she spoke perfect English, unequivocally replied, "Yes." (See *People v. Perez* (2018) 19 Cal.App.5th 818, 829-830 ["the record belies [the defendant's] contention that he did not meaningfully understand the immigration consequences of his plea" because "the superior court explicitly informed [the defendant] that if he were to plead guilty, he would be deported from the United States"].) The transcript was the best contemporaneous evidence of Bohmwald's understanding of the consequences of her plea,

14

and it contradicted Bohmwald's testimony 12 years later. (See *People v. Bravo*, *supra*, 58 Cal.App.5th at p. 1172 ["the sole contemporaneous evidence . . . [was] the plea bargain agreement and its advisement of rights," which "prove[d] false" the defendant's "attestation that he had received no such admonition at all"], review granted.)

Moreover, as the superior court observed, once the prosecutor advised Bohmwald of the immigration consequences of her plea, Bohmwald could have asked for another opportunity to speak with her attorney if she was confused, uncertain, or hesitant. She did not. The absence of anything in the record to indicate Bohmwald did not understand the admonition or needed to speak to her attorney, along with her failure to ask to speak with her attorney after she was advised her plea would have immigration consequences, confirms she understood and knowingly accepted those consequences.[7] (See *People v. Tapia* (2018) 26 Cal.App.5th 942, 952-953 [evidence showed that the defendant "was advised of the specific immigration consequences of his plea" because, among other things, "[a]fter being specifically advised by the trial court his plea would lead to his deportation and denial of readmission to the United States," the defendant "did not request more time to speak with counsel or

---

[7] The superior court did not make an explicit finding that Bohmwald's attorney failed to discuss with Bohmwald the immigration consequences of her plea. The court found Bohmwald failed to show any error that affected her ability to meaningfully understand the consequences of her plea. Contrary to Bohmwald's assertion, section 1473.7 does not require the court to make a finding regarding the attorney's performance at the plea hearing. (See § 1473.7, subd. (a)(1) [a court need not make a finding of ineffective assistance of counsel to find a plea was legally invalid].)

further consider the appropriateness of entering a plea"].)  In addition, the court in 2006 witnessed Bohmwald affirm her understanding of the immigration consequences of her plea and found she knowingly and intelligently entered her plea and understood the consequences.  Bohmwald does not address this evidence; she relies instead on her testimony and declaration in support of the motion, which are inconsistent with the rest of the record.

The superior court's finding that Bohmwald did not accurately recall the plea proceedings discredited the key evidence on which Bohmwald relied.  The superior court did not believe Bohmwald's testimony that she received inadequate advice in 2006 or that she was unaware of the immigration consequences of her plea.  (See *People v. Lopez* (2018) 5 Cal.5th 339, 352 ["'a failure to remember aspects of the subject of the testimony'" presents a question "'of credibility for resolution by the trier of fact'"].)  The superior court's comments at the hearing reveal that the court was focused on assessing Bohmwald's memory of what occurred in 2006, and we cannot reevaluate the superior court's resolution of that credibility issue.  (See *People v. Jung*, *supra*, 59 Cal.App.5th at p. 853; *People v. Tapia*, *supra*, 26 Cal.App.5th at p. 953.)  And in any event, the record amply supports the court's decision to discount Bohmwald's testimony.  In addition to the contradiction between Bohmwald's testimony that she did not understand the immigration consequences of her plea and her statements at the plea hearing in 2006 that she did, there were other discrepancies that cast doubt on the accuracy of her memory.  Bohmwald testified she did not remember the prosecutor advising her that she had the right to a jury trial, yet the prosecutor gave her that very advisement.  Bohmwald testified she did not remember the prosecutor advising her that she had the right to confront and cross-examine witnesses, yet

16

the prosecutor gave her that very advisement too. While Bohmwald argues she did not remember the prosecutor speaking to her "at all," the prosecutor in fact spoke to Bohmwald at length, and Bohmwald answered all of the prosecutor's questions. Bohmwald's evidence that she did not understand the immigration consequences of her plea was not uncontradicted or unimpeached, and it did not preclude the superior court from finding it was insufficient.

### 3. *Bohmwald Has Not Shown Prejudice*

Bohmwald also did not show prejudice. Bohmwald contends she established prejudice by stating, in her declaration and at the hearing on her motion, that "had she known of the adverse immigration consequences she would not have accepted the plea." "In order to satisfy [the defendant's] burden to prove prejudice, 'the defendant must provide a declaration or testimony stating that he or she would not have entered into the plea bargain if properly advised. It is up to the trial court to determine whether the defendant's assertion is credible, and the court may reject an assertion that is not supported by an explanation or other corroborating circumstances.'" (*People v. Vivar, supra,* 43 Cal.App.5th at p. 229, review granted.)

The superior court did not believe Bohmwald's testimony, finding that in 2006 she was not "that concerned" with the immigration consequences of a felony conviction. Not only did Bohmwald fail to ask about the immigration consequences of her plea when she heard the relevant admonition from the prosecutor, she continued to commit crimes that could have similar adverse immigration consequences. The superior court stated that it understood why Bohmwald now said she would have not accepted the immigration consequences of her plea, but found that her overriding interest in getting out of jail in 2006

motivated her to take the plea bargain. As discussed, we defer to the court's credibility findings.

Nor did Bohmwald submit evidence to corroborate her assertion that, had she been fully advised in 2006 of the immigration consequences of her plea, she would not have pleaded no contest to violating section 484e, subdivision (d). The absence of such evidence further showed a lack of prejudice. (See *Lee v. United States* (2017) 582 U.S. ___, ___ [137 S.Ct. 1958, 1967, 198 L.Ed.2d 476] ["[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies," but "should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences"]; *People v. Bravo, supra,* 58 Cal.App.5th at p. 1172 [defendant "points to no contemporaneous evidence in the record to independently corroborate the attestation in his declaration"], review granted; *People v. Cruz-Lopez* (2018) 27 Cal.App.5th 212, 224 ["a declaration by defendant is suspect by itself"]; cf. *Lee,* at pp. ___, ___, 137 S.Ct. at pp. 1963, 1968 [defendant and his trial counsel testified "'deportation was the determinative issue in [the defendant's] decision whether to accept the plea,'" and the defendant's responses during the plea colloquy confirmed the importance he placed on deportation]; *People v. Ogunmowo* (2018) 23 Cal.App.5th 67, 78-79 [defendant's attorney stated in a declaration that the defendant affirmatively sought his advice about immigration consequences before entering his guilty plea, which provided "contemporaneous evidence" to support the defendant's "assertion he would have rejected the plea deal if his

attorney had not misadvised him about the immigration consequences of a conviction"].)[8]

---

[8] Bohmwald argues that the circumstances of her life in 2006 supported her testimony that "adverse immigration consequences were a priority for her." As discussed, the superior court found that in 2006 Bohmwald did not appear to have much concern about the immigration consequences of her plea. (Cf. *People v. Mejia*, *supra*, 36 Cal.App.5th at p. 872 [evidence that the defendant's "wife and infant son were living in the United States," the fact the defendant pleaded open to the court rather than pursuant to "a negotiated disposition," and the presence of "lingering questions about the strength of the underlying evidence" substantiated the defendant's claim "he would not have pleaded guilty had he known about the mandatory and dire immigration ramifications"]; *People v. Camacho*, *supra*, 32 Cal.App.5th at p. 1011 [defendant presented "compelling" evidence, including that he was married to a United States citizen and had a young son who was a United States citizen, to support the defendant's assertion he would have rejected the plea offer had he known of the immigration consequences].)

## DISPOSITION

The order denying Bohmwald's motion under section 1473.7 to vacate her 2006 conviction is affirmed.


SEGAL, J.


We concur:


PERLUSS, P. J.


McCORMICK, J.[*]

---

[*] Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.