Filed 5/12/21; certified for publication 6/1/21 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CARLOS CASTILLO<br><br>    Defendant and Appellant. | B303413<br><br>(Los Angeles County<br>Super. Ct. No. BA002067) |

APPEAL from an order of the Superior Court of Los Angeles County.  Frederick N. Wapner, Judge.  Affirmed.

Christopher L. Haberman, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Roberta L. Davis, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

# INTRODUCTION

In 2019, appellant Carlos Castillo filed a motion to vacate his 1989 conviction for possession for sale of cocaine.  He claims his defense counsel failed to advise him about the adverse immigration consequences of entering a guilty plea and, as a result, he did not understand that he was facing deportation on the basis of his conviction and plea.  The trial court denied appellant's motion, and he appealed.

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.     1989 Felony Conviction

On April 30, 1989, appellant was arrested for possession for sale of a controlled substance (Health & Saf. Code, § 11351)—a felony.  Officers retrieved 13 bindles of cocaine totaling 3.6 grams, an air pistol, a pipe with cocaine residue, and $190 in cash in various denominations.

On October 17, 1989, a pre-trial hearing took place before Judge Bernard J. Kamins; appellant was represented by Diane Wiseman (Wiseman).  The People offered appellant a sentence of six to 12 months if he pled guilty as charged.  The court noted appellant faced four years in prison but stated it would sentence him to a minimum of six months if he took the plea at this "very early stage of the case," so long as he did "not hav[e] any prior felonies.  If [he did], the penalty goes up."

Appellant told the court he "wasn't selling [cocaine]."  The court explained he was charged with possession of cocaine in a quantity sufficient to sell and that the prosecutor was "not charging you with selling it."

2

Wiseman advised the court appellant "would like to proceed to trial [and] would request the court order that the police fingerprint the bag." The court explained it was "up to" the prosecution whether to have the bag fingerprinted. The court cautioned appellant that if he opted for trial, he "may be looking at four years" instead of six months. The court further cautioned appellant that the evidence at trial "[is] really going to be your word against the policeman's."

The record reflects appellant and Wiseman conferred off the record. Wiseman then advised the court that appellant authorized her to disclose he recently pled guilty to possession or possession for sale of marijuana. The court told appellant it won't "punish him for his honesty" and if appellant "wants to plead at this time, [the court] would still keep [appellant's sentence] under a year." Wiseman then informed the court appellant "wishes to accept." The court instructed the prosecutor to take the plea.

The record reflects appellant and Wiseman again conferred. Appellant, who had appeared in this matter as Richard Rivas and later as Carlos Castillo, told the court his true name was Hugo Zelaya. The court commended appellant, stating "[i]t's very refreshing to see someone come forward and be as honest."

Wiseman then informed the court it is "possible" appellant had two prior convictions; she explained appellant "was on probation on one case" when he had a second case, but was unsure whether these two prior cases were consolidated. The court commented "this is getting to be a real nightmare" and asked whether they could proceed to "just take the plea now." The court indicated appellant was "the first guy that's been honest at this point" and that "most [defendants] keep holding

3

out and it turns out they are under all kinds of probation under different names."

The prosecutor took the plea, and advised appellant of his rights and the consequences of the plea, including: "If you're not a citizen of the United States, pleading guilty could result in your deportation, denial of reentry, or denial of naturalization as a United States citizen. [¶] Do you understand that?" Appellant responded, "Yes." Appellant confirmed he had time to talk about this case with his attorney and was "pleading guilty freely, voluntarily, and because [he is] guilty." Appellant waived his rights and pled guilty.

The court found "a knowing and intelligent waiver."

## II.    2019 Motion to Vacate the 1989 Conviction

On March 25, 2019, appellant, under the name Hugo Zelaya, filed a motion to vacate his 1989 conviction pursuant to Penal Code[1] section 1473.7, on the ground he "did not meaningfully understand, was unable to defend against and did not knowingly accept the actual or potential adverse immigration consequences of a plea of guilty." He alleged his counsel "failed to investigate and advise him about the immigration consequences that he was facing."

In support of his motion, appellant submitted a declaration signed under penalty of perjury, detailing the following:

Appellant was born in El Salvador. He participated in the Fuerzas Populares de Liberacion (FPL)—an opposition political party—for six to eight months, where he occasionally painted banners; he also participated in an armed takeover and shutdown

---

[1]    All further undesignated statutory references are to the Penal Code.

4

of a local church.  He soon discovered the government was "spying" on him and that his name was on a list of people whom the government wanted to kill.  In 1979, appellant learned the Salvadoran government, army, national guard, and commissioners killed some of his friends and associates "because of their involvement in the FPL opposition party."  In 1981, appellant (then 15 years old) "fled El Salvador" and arrived unaccompanied in the United States.

He explained he started using the name Mario Gonzalez-Beltran after he witnessed the killing of a MS-13 gang leader known as El Ratta in Los Angeles.  MS-13 gang members questioned him about the killing and beat him up with a bat.  In 1990, MS-13 gang members shot him in the stomach.  In 1992 or 1993, appellant changed his name and moved to San Diego, "in the hope that they could not find me."  He met his wife thereafter and they have three children together.

On July 3, 2012, appellant was detained at an immigration detention facility and held for four years based on his 1989 conviction.  In 2016, he was released pending conclusion of his immigration case.  He is now "in immigration proceedings and [is] seeking asylum" as he is "terrified of the prospect of being deported to El Salvador."  While detained, he wrote three letters to Wiseman asking for help.

Appellant asserted Wiseman never asked him about his immigration status in 1989 and did not inform him that a conviction for violating Health and Safety Code section 11351 is an aggravated felony that necessarily results in deportation from the United States.  Appellant further asserted had he known such information, he would not have pled guilty because he did

not wish to be deported to El Salvador, "a country [he] fled because of violence and the death threats [he] received."

Appellant, now 53 years old, stated he wishes to stay with his family in the United States, which he considers his home.

Appellant included as exhibits to his declaration the three letters he sent to Wiseman in 2015, pleadings related to the 1989 case, and the reporter's transcript of relevant proceedings held in 1989. He also provided a declaration by E. Katharine Tinto (Tinto), a clinical professor of law and the director of the Criminal Justice Clinic at the University of California, Irvine School of Law. After review of the court file, defense counsel's file, appellant's criminal history, and the reporter's transcript of relevant hearings, Tinto opined Wiseman's representation of appellant "fell below the standards for reasonable effective assistance of counsel with regard to advice and defending against the immigration consequences of the conviction."

Appellant also submitted a letter he received from Wiseman dated January 9, 2019. In this letter, Wiseman stated she represented appellant 29 years prior, and did not have an "independent recollection" of the specifics of the case, including whether she negotiated with the prosecutor for a more immigrant-neutral conviction and whether she advised appellant about the immigration consequences of the plea.

Wiseman stated it was her general custom and practice to interview, advise, and speak with her clients before court appearances. Wiseman's file indicated she met with appellant on September 12, 1989, since the date "9/12" is written next to her case interview notes. Based on her review of the notes, Wiseman believed she "met with [appellant] two to three times before doing

6

his preliminary hearing" and "at least three times between his preliminary hearing and guilty plea."

Wiseman also stated it was her practice to review probation reports with clients; thus, it would be her "practice to review with [appellant] the discussion in the [probation] report regarding [his] prior deportation under the name of Hugo Cortez-Gonzalez, his use of many aliases" and that immigration authorities were notified via letter on March 14, 1988. A Spanish-language interpreter was used during Wiseman's meetings with appellant. Wiseman ceased representing appellant sometime in December 1989, when a conflict of interest was discovered.

The People opposed appellant's motion. In support, they attached as an exhibit the CLETS printout and criminal history for appellant, which showed he had several felony convictions *prior to* the 1989 case: possession of marijuana for sale (Health & Saf. Code, § 11359) in 1986; possession of a controlled substance (*id*., § 11350, subd. (a)) in 1987; and sale/furnishing of marijuana (*id*., § 11360, subd. (a)) in 1988. The CLETS printout also showed appellant had pled guilty to multiple crimes *after* his plea in the 1989 case, including transportation/sale of a controlled substance (*id*., § 11352, subd. (a)) in 1990; possession for sale of a controlled substance (*id*., § 11351) in 1992; use/under the influence of a controlled substance (*id*., § 11550, subd. (a)) in 2001; and driving under the influence with a prior (Veh. Code, § 23152, subd. (a)) in 2010. Appellant's criminal history record also showed he had used between 10 and 15 different names and between five and seven different birthdays within the last 30 years.

Based on appellant's criminal history, the People argued appellant had previously been given immigration advisements and was put on notice of potential immigration consequences.

III.   Hearing and Ruling on Motion to Vacate

The hearing on appellant's motion took place August 15, 2019 and October 17, 2019.

Appellant testified on his own behalf.  For the most part, he repeated the information in his declaration and provided the following additional relevant information.  When appellant left El Salvador, he went to Guatemala, then Mexico, and then "crossed the border in Nuevo Leon, Tamaulipas to Laredo, Texas."  He remained in Texas from 1981 until 1985, then moved to Los Angeles.  In 1985, he was deported by the Immigration and Naturalization Service (INS) to Mexico.  He returned to the United States.  In 2012, he was picked up again and detained in immigration custody.

During cross examination, appellant denied ever being advised about immigration consequences during his other felony cases; he was asked specifically about his 1986 conviction by plea for possession of marijuana for sale, his 1987 conviction by plea for possession of a controlled substance, his 1990 conviction by plea for transportation/sale of a controlled substance, and his 2001 conviction by plea for use or being under the influence of a controlled substance.  He said that in the last 30 years, throughout the dozen or so cases and different counsel he has had, "no lawyer ha[d] told [him] . . . [he] was gonna suffer immigration consequences."  He said he was "positive" he was never told about immigration consequences.  He admitted, however, that the courts had notified him of immigration

8

consequences, stating "that's the proceeding of the court, and I think [that] they do it every time."

Notably, when asked by the prosecutor if, in the course of the last 30 years, he "used those 12 to 15 names or five to six different birth dates because [he] knew that [he was] in danger of being deported due to [his] convictions," appellant responded, "Yes."

As to the 1989 case, appellant recalled only one conversation with counsel. Appellant said Wiseman never discussed immigration consequences that might arise from a conviction. He said he "felt cornered" by Wiseman "because she didn't want to help" him. He recalled having a Spanish interpreter present with Wiseman during the 1989 case.

Appellant testified he does not wish to be deported to El Salvador, where he is afraid for his life. He wants to remain in the United States with his wife and adult children. He has a half-brother still residing in El Salvador.

Following argument, the trial court denied the motion to vacate. The court commented that motions such as appellant's "tug at [the] heart strings," but was not convinced by appellant's declaration and testimony. The court found appellant "was emphatic that there was never a lawyer who told him anything about the immigration consequences. Not one. . . . [¶] And I just don't believe it."

The court made further findings: "I think what was going on is what's all too typical in the American criminal justice system  What's the best deal I can get?  I'm sure it was horrible in El Salvador, but I do not believe in the forefront of his mind at that moment when he was sitting in front of Judge Kamins, as bad as that plea sounds, that he was thinking to himself, no way

9

am I doing this to take this chance. I don't care what they offer me. I'm going to trial. No. [¶] Judge Kamins kept telling you, this is the best deal. [E]ven though he . . . made the nightmare comment, he kept complimenting [appellant] on his honesty, which is ironic, I think, in light of this finding. And the more he complimented, the more other things came out."

Appellant timely appealed.

## DISCUSSION

Appellant contends his conviction must be vacated because defense counsel failed to advise him of the actual immigration consequences of his plea and failed to defend against such immigration consequences by pursuing an immigration-neutral plea deal. He argues Wiseman rendered ineffective assistance of counsel. He argues this prejudicial error damaged his ability to understand and knowingly accept the actual/potential adverse immigration consequences of his plea. He also contends the trial court applied "an incorrect test" in denying the motion.

I.    Standard of Review

Our Supreme Court recently determined the standard of review for section 1473.7 motion proceedings. In *People v. Vivar*, (May 3, 2021, S260270) ___Cal.5th ___[2021 WL 1726827] (*Vivar*), the Court endorsed the independent standard of review. (*Id.* at p. *6.) Under independent review, an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law. (*Id.* at p. *8.) When courts engage in independent review, they should be mindful that independent review is not the equivalent of de novo review. (*Ibid.*) An appellate court may not simply second-guess factual findings that are based on the trial court's own observations. (*Ibid.*) Factual

10

determinations that are based on the credibility of witnesses the superior court heard and observed are entitled to particular deference, even though courts reviewing such claims generally may reach a different conclusion from the trial court on an independent examination of the evidence even where the evidence is conflicting. (*Ibid*.) In section 1473.7 motion proceedings, appellate courts should similarly give particular deference to factual findings based on the trial court's personal observations of witnesses. (*Ibid*.) Where the facts derive entirely from written declarations and other documents, however, there is no reason to conclude the trial court has the same special purchase on the question at issue; as a practical matter, the trial court and this court are in the same position in interpreting written declarations when reviewing a cold record in a section 1473.7 proceeding. (*Ibid*.) Ultimately it is for the appellate court to decide, based on its independent judgment, whether the facts establish prejudice under section 1473.7. (*Ibid*.)

II.     Applicable Law

Mandatory removal from the United States is a consequence of being convicted of a crime deemed an aggravated felony under federal immigration law. (*Moncrieffe v. Holder* (2013) 569 U.S. 184, 187–188 (*Moncrieffe*); 8 U.S.C. § 1228, subd. (c) [aggravated felon is "conclusively presumed" deportable].) Thus, an aggravated felony conviction renders a defendant ineligible for relief such as asylum and cancellation of removal. (*Moncrieffe*, at p. 187.) A violation of Health & Safety Code section 11351 is an aggravated felony. (*People v. Ogunmowo* (2018) 23 Cal.App.5th 67, 77 (*Ogunmowo*); see *Fonseca v. Fong* (2008) 167 Cal.App.4th 922, 925, fns. 1, 2.)

11

Section 1473.7 authorizes a person who is no longer in criminal custody to move to vacate a conviction or sentence where the "conviction or sentence is legally invalid due to *prejudicial error* damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere."  (§ 1473.7, subd. (a)(1), italics added.)

"Ineffective assistance of counsel that damages a defendant's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a guilty plea, if established by a preponderance of the evidence, is the type of error that entitles the defendant to relief under section 1473.7.  [Citation.]  To establish ineffective assistance of counsel, a defendant must demonstrate that his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and that he was prejudiced by the deficient performance."  (*Ogunmowo*, *supra*, 23 Cal.App.5th at p. 75; see *Strickland v. Washington* (1984) 466 U.S. 668 (*Strickland*).)

Effective January 1, 2019, the Legislature amended section 1473.7 to clarify that a "finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel." (§ 1473.7, subd. (a)(1).)  Therefore, a defendant asserting error based on an attorney's erroneous advisement need not prove the elements of a claim for ineffective assistance of counsel.  (*People v. Camacho* (2019) 32 Cal.App.5th 998, 1008.)  Instead, a defendant seeking relief via a motion under section 1473.7 must show *prejudicial error* which is "not limited to the *Strickland* test of prejudice, whether there was reasonable probability of a different outcome in the original proceedings absent the error."

(*Id.* at p. 1009.)  To establish prejudice, a defendant must show by a preponderance of the evidence that he would not have entered the plea had he known about the immigration consequences.  (*Id.* at pp. 1010–1011; see *People v. Martinez* (2013) 57 Cal.4th 555, 565 (*Martinez*) [defendant may show prejudice by "convinc[ing] the court [that he] would have chosen to lose the benefits of the plea bargain despite the possibility or probability deportation would nonetheless follow"]; see *Lee v. U.S.* (2017) 137 S.Ct. 1958, 1965 [a defendant can show prejudice by demonstrating a reasonable probability he would not have pled guilty and would have insisted on going to trial, but for counsel's errors].)

III.  Defendant Failed to Establish He is Entitled to Relief

A.  *No Ineffective Assistance of Counsel*

Appellant argues his counsel Wiseman failed to advise of the actual immigration consequences of his plea and failed to investigate and defend against such immigration consequences by pursuing an immigration-neutral plea deal, resulting in ineffective assistance of counsel.  Relying on *Padilla v. Kentucky* (2010) 559 U.S. 356 (*Padilla*), appellant argues his trial counsel's performance was defective.

We find *Padilla* not instructive because appellant pled guilty 21 years before the *Padilla* opinion was issued.  In *Chaidez v. United States* (2013) 568 U.S. 342, the Supreme Court concluded that *Padilla* "announced a new rule" by imposing an obligation on trial counsel to understand and accurately explain the immigration consequences of a plea to a defendant before the entry of that plea.  (*Id.* at p. 358.)  The Supreme Court further held *Padilla* could not be applied retroactively to cases that were

final at the time the opinion in *Padilla* was issued. (*Id.* at pp. 344, 358.) Therefore, appellant's trial counsel had no affirmative duty in 1989 to research and advise appellant of the actual immigration consequences of his plea. (See *id.* at pp. 356-358.) Wiseman's representation did not fall below the then-contemporary objectively reasonable standard of practice.

Appellant argues that even prior to *Padilla*, California courts imposed a duty on trial counsel to inform clients of the immigration consequences of their pleas. He relies on *People v. Soriano* (1987) 194 Cal.App.3d 1470 (*Soriano*). We do not read *Soriano* to so hold. In that case, the defendant submitted a declaration stating he had informed his attorney he was an immigrant, and his attorney told him if he pled guilty, he would serve only eight months in county jail. (*Id.* at p. 1478.) The defendant in *Soriano* had asked his attorney if he would be deported if he pled guilty, and she said he would not. (*Ibid.*) The defendant stated he pled guilty based on these express assurances. (*Ibid.*) The *Soriano* court determined trial counsel's erroneous advice—that the guilty plea would not make him deportable—in response to the defendant's specific inquiries about immigration consequences constituted ineffective assistance of counsel. (*Id.* at p. 1482.)

Appellant's reliance on *Soriano* is misplaced because the facts here are distinguishable. Unlike the defendant in *Soriano*, it is not appellant's position that he specifically asked his counsel if his guilty plea would make him deportable and in response he received erroneous advice. In other words, appellant did not enter his guilty plea based on false assurances by Wiseman. We believe *Soriano* is properly limited to its facts. We base this on the *Soriano* court's invocation of the commentary to the American

14

Bar Association's Standards for Criminal Justice, standard 14-3.2, which states " '[w]here the defendant raises a specific question concerning collateral consequences (as where the defendant inquiries about the possibility of deportation), counsel should fully advise the defendant of these consequences.' " (*Soriano, supra*, 194 Cal.App.3d at p. 1481.) We find no ineffective assistance where, as here, counsel allegedly failed in 1989 to give unsolicited advice.

### B. *No Prejudice*

Next, we find no merit to appellant's assertion that it was reasonable to expect he could have pled to an alternative, immigration-neutral offense had Wiseman pursued one. There is no evidence in the record indicating the prosecutor would have considered, or the trial court would have accepted, a different plea. Appellant's speculation that another plea could have been negotiated " 'is not evidence, less still substantial evidence.' " (*People v. Waidla* (2000) 22 Cal.4th 690, 735; see *People v. Tapia* (2018) 26 Cal.App.5th 942, 953–954.)

Even if Wiseman's advisement was insufficient, we independently find appellant's claim fails because he has not shown prejudice. At the outset, we note appellant's motion to vacate was based primarily on his declaration and then oral testimony that he did not understand the consequences of the plea. However, the trial court expressly found appellant not credible. We do not reevaluate witness credibility. (*In re Resendiz* (2001) 25 Cal.4th 230, 249, abrogated in part on other grounds in *Padilla, supra*, 559 U.S. at p. 370.)

In addition, appellant's assertion that he would not have pled but for Wiseman's failure to advise him of adverse immigration consequences is not enough. (*Lee v. U.S., supra*,

15

137 S.Ct. at p. 1967.) "Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." (*Ibid.*) There must also be "contemporaneous evidence to substantiate a defendant's expressed preferences." (*Ibid.*) Among the many factors to be considered are defendant's ties to the United States, the presence or absence of other plea offers, the seriousness of the charges in relation to the plea bargain, the defendant's criminal record, the defendant's priorities in plea bargaining, the defendant's aversion to immigration consequences, and whether the defendant had reason to believe that the charges would allow an immigration-neutral bargain that a court would accept. (*Martinez, supra*, 57 Cal.4th at p. 568.) A defendant's probability of success at trial also forms part of this inquiry, as a defendant would be less likely to insist on going to trial if the consequences of trial lead to a worse sentence than compared to the plea. (See *Lee v. U.S.*, at p. 1966.)

Our review of the *Lee* and *Martinez* factors does not convince us appellant would have opted for trial had he been properly advised of the immigration consequences. There was a significant disparity between the sentence he received on his plea and the lengthier sentencing exposure he faced had he been convicted at trial; the trial court had noted the People's offer of six months was "the minimum" and that he "may be looking at four years" in prison if he opted for trial. The court also indicated his sentence would "go up" if appellant had prior convictions, and appellant soon disclosed the existence of two priors. Based on our review of the record, appellant had more than two priors under several different names. That fact may have motivated appellant

16

to agree to a quick plea rather than risk discovery of the full extent of his prior convictions.

"It is up to the trial court to determine whether the defendant's assertion is credible, and the court may reject an assertion that is not supported by an explanation or other corroborating circumstances." (*Martinez*, *supra*, 57 Cal.4th at p. 565.) Here, the trial court found appellant not credible when he testified he had no idea of the adverse immigration consequences because no attorney had ever told him so. The trial court's finding is supported by the record. Notably, when asked by the prosecutor if he "used those 12 to 15 names . . . because [he] knew that [he was] in danger of being deported due to [his] convictions," appellant said yes.

Against this backdrop is appellant's countervailing fear of violence against him if he returned to El Salvador. But he does not state that he told his attorney anything about this fear so that she could have tried to mitigate the consequences of the plea or at least given him more explicit advice. This evidentiary gap bolsters the trial court's conclusion that appellant was not credible when he declared he would not have pled guilty had he not been ignorant of the immigration consequences of the plea.

We also note the transcript of the 1989 pre-trial hearing before Judge Kamins shows appellant felt comfortable enough to interrupt the court proceedings to ask questions and he conferred off the record with defense counsel multiple times. The record also shows appellant voiced things he was unsure about: he asked about fingerprinting the bag of cocaine, he clarified whether he was charged with sale of cocaine as opposed to possession for sale. However, after the prosecutor advised him of the immigration consequences of the conviction, the record shows

17

appellant did not interrupt to ask questions or confer with counsel.  Instead, when asked if he understood, appellant affirmatively stated he did.  This serves as substantial evidence supporting the trial court's finding that appellant's priority at the time of the plea was not to avoid immigration consequences.

Undoubtedly, removal from the United States after creating a life and family here for over three decades is a nightmare.  However, the test for prejudice considers what appellant would have done had he been properly advised of immigration consequences *at the time of the plea*, and not the consequences appellant faces now in 2021.  (See *Martinez*, *supra*, 57 Cal.4th at p. 564.)

Exercising our independent review while deferring to the trial court's credibility determinations and factual findings, we conclude appellant did not meet his burden for relief under section 1473.7.

IV.    The Trial Court Did Not Use an Incorrect Standard in Denying the Motion

In his briefing, appellant sporadically argues the trial court did not use a preponderance of the evidence standard in making its findings and instead held appellant to a different standard of proof by using an "incorrect test." Without explaining the term, appellant argues the trial court ignored "the overwhelming evidence that favored granting the motion."  However, the evidence, in a nutshell, was 1) appellant did not ask about immigration consequences; 2) his counsel did not recall and her notes did not show whether she advised him about the immigration consequences at a time when such unsolicited advice was not deemed ineffective assistance; 3) he entered a guilty plea in a bargain which saved him three years in state prison; 4) he

18

had sustained similar convictions before and after this plea; 5) he unconvincingly averred without supporting independent evidence that he never would have taken the plea because of his ignorance. Under the *Martinez* factors, this evidence is neither overwhelming nor indicative that the trial court held appellant to an incorrect test.

## DISPOSITION

The order is affirmed.

STRATTON, J.

We concur:

BIGELOW, P. J.

GRIMES, J.

19

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B303413 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA002067) |
| v. | |
| CARLOS CASTILLO | ORDER CERTIFYING OPINION FOR PUBLIATION |
| Defendant and Appellant. | [NO CHANGE IN JUDGMENT] |

THE COURT:

The opinion in the above-entitled matter filed on May 12, 2021, was not certified for publication in the Official Reports.  For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.

There is no change in the judgment.

_____

BIGELOW, P. J.                    GRIMES, J.                    STRATTON, J.