Filed 1/31/25  P. v. Lastico CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>ORLANDO LASTICO,<br><br>     Defendant and Appellant. | B334929<br><br>(Los Angeles County<br>Super. Ct. No.  NA100312)<br><br>ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING |

IT IS ORDERED that the opinion filed in the above-captioned matter on January 9, 2025, be modified as follows:

1. On page 3, the first sentence in the first full paragraph, starting with "Lastico's trial began on . . ." is deleted and replaced with the following:

"Lastico's trial began on August 18, 2015, at which time Lastico had already refused the People's most recent plea offer."

And following this sentence, a new footnote is added:

"The record is not clear whether that offer was three years as described by the prosecutor at one point or three years and eight months as described by the trial court at another point."

2. On page 5, last paragraph, delete footnote 5 that begins with "Although not mentioned in the notice of removal . . . ."

These modifications effect no change in the judgment.

The petition for rehearing filed by appellant on January 24, 2025, is denied.

_____

LUI, P. J.        CHAVEZ, J.        RICHARDSON, J.

Filed 1/9/25  P. v. Lastico CA2/2 (unmodified opinion)

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B334929 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No.  NA100312) |
| v. | |
| ORLANDO LASTICO, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court, Los Angeles County, James D. Otto, Judge.  Affirmed.

Christopher Lionel Haberman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

———————————————

Before accepting a negotiated plea bargain, Orlando Lastico was warned that his guilty pleas would result in his being deported from the United States and denied re-entry. Lastico then pleaded guilty to crimes including forgery, perjury and grand theft of personal property. After completing his sentence, he unsuccessfully moved to vacate his plea. On appeal, Lastico argues that his counsel failed to advise him that his guilty plea would result in his being deported. Lastico's arguments lack merit, and we affirm the order denying relief.

## FACTUAL AND PROCEDURAL BACKGROUND
### A. The Charges and Plea Negotiations

Lastico is a citizen of the Philippines. He entered the United States as a visitor in 1990 and has resided in this country ever since. He became a lawful permanent resident in 2001. Lastico's adult daughter and three grandchildren are United States citizens. Lastico also has an adult son and four other grandchildren in the Philippines.[1]

On January 20, 2015, Lastico was charged in an information with perjury – application for identification card (Pen. Code,[2] § 118, subd. (a) [count 1]), forgery (§ 470, subd. (d) [count 2]), and grand theft of personal property (§ 487, subd. (a) [count 3]).

On August 17, 2015, the People filed an amended information adding counts for false personation (§ 529, subd.

---

[1] It is not clear from the record whether his adult daughter and U.S. citizen grandchildren live in the United States. We assume for purposes of this appeal that they are.

[2] All further undesignated statutory references are to the Penal Code.

(a)(3) [count 4]), giving false information to a police officer (§ 148.9, subd. (a) [count 5]), and possession of a smoking device (Former Health & Saf. Code, § 11364.1, subd. (a)(1) [count 6]). It was further alleged that Lastico committed count 4 while released on bail or his own recognizance (§ 12022.1).

Lastico's trial began on August 18, 2015, at which time Lastico had already refused the People's offer of three years and eight months. During jury selection that morning, defense counsel informed the court that Lastico had changed his mind and "wanted to enter a plea and not proceed with trial." Lastico's counsel inquired about a drug program, but the trial court refused. The court indicated it would consider a sentence of two years confinement followed by two years of supervised probation, and advised Lastico's counsel "[t]his is the very best I can do in this case." Addressing the court, Lastico asked "please give me just short time." Defense counsel stated, "I'm under the impression . . . that the split sentence [of] four years is the best you can do on this case." After the court concurred, stating "This is the very best I can do in this case. I think it's an appropriate sentence in this case," Lastico again asked "to go to rehabilitation" for a "drug problem" and asked the court to "give me just short time." The court responded, "Sir, do you want to accept the offer or want to have your trial? I have jurors waiting here." Lastico told the court, "Sir, it's hard for me to accept that." The court answered, "Then don't accept it. We'll go to jury trial, but you're looking at nine years if you're convicted." Lastico again asked the court whether it could give him a sentence "a little bit lower." The court again refused: "I can't do anything more for you, but I'll tell you if you get convicted, you are looking at nine years in this case." Lastico declined the offer.

Following the lunch break, defense counsel informed the court that "[Lastico] thought about it and he wants the split sentence." Before taking Lastico's plea, defense counsel stated, "I think it would be advisable if I go over his rights with him carefully now so there's no interruptions once the plea is taken." Defense counsel paused to confer with Lastico and to show him a felony guilty plea form[3] "to make the rights more clear." Defense counsel then informed the court, "I believe we're ready to proceed. The only thing [Lastico] wants me to address is the application of house arrest." The court again refused to sentence Lastico to house arrest, and Lastico accepted the sentence the court had previously described.

Before the prosecutor advised Lastico of his rights, the court informed him, "If you have any questions at any time, please interrupt and let us [know]." The prosecutor then advised Lastico as follows: "If you are not a citizen of the United States, your conviction in this case will result in your deportation, exclusion from the United States and denial of naturalization." The prosecutor then asked, "Have you discussed the immigration consequences with your attorney?" Lastico responded, "No." Defense counsel then said "Well, I have, but I'll do it again."

After Lastico conferred with his counsel, the prosecutor asked Lastico again, "Have you discussed the immigration consequences with your attorney?" This time Lastico responded, "Yes, Ma'am." The prosecutor then asked, "Do you understand

---

[3]     The form is not in the record. In his opening brief Lastico's counsel describes it as "the standard section 1016.5 admonishment the court gives to all defendants, albeit in a mandatory form, stating that the conviction 'would' result in deportation, etc."

4

that the District Attorney's Office will not extend an offer that will not have immigration consequences?" Lastico answered, "Yes."

Lastico pleaded guilty[4] to counts 1, 2, 3, 4 and 6, and further admitted the truth of the out-on-bail allegation on count 4. Counsel stipulated to a factual basis for Lastico's plea based on the preliminary hearing transcript and discovery. The court then addressed defense counsel, stating "You've advised [Lastico] of the immigration consequences of his plea or determined he is a U.S. citizen. I'll note that for the record, because I couldn't help but overhear you explain that twice. That's correct?" Defense counsel responded, "It is correct, Your Honor."

The court sentenced Lastico to the terms as indicated.

**B. Lastico Moves to Vacate His Conviction**

On March 3, 2021, the Department of Homeland Security served Lastico with a notice to appear for removal proceedings under federal law. As grounds for removal, the notice cited Lastico's guilty pleas to the forgery and perjury charges in the amended information.[5]

---

[4] Specifically, Lastico pleaded "open," meaning that the defendant was not offered any promises as to the sentence. (*People v. Cuevas* (2008) 44 Cal.4th 374, 381, fn. 4.) Whether the plea here was truly open or a negotiated disposition is not at issue in this appeal.

[5] Although not mentioned in the notice of removal, it appears Lastico's guilty plea to grand theft of personal property may also subject him to removal and exclusion. (*Ramirez-Villalpando v. Holder* (9th Cir. 2011) 645 F.3d 1035, 1041 [grand theft of personal property under California law is an "aggravated felony"].)

On June 29, 2023, Lastico filed a motion to vacate his conviction under section 1473.7. In his declaration supporting the motion, Lastico contended his former counsel failed to advise him that some of the charges he faced were classified as "aggravated felonies" for purposes of immigration law, and that a guilty plea would nearly guarantee his removal from the United States. Because he was not fully advised of the consequences, Lastico stated, he pleaded guilty "without having a meaningful understanding of the severe, mandatory immigration consequences of the plea." Had he been advised of these consequences, Lastico declared, "I would have never pleaded guilty. Instead, I would have sought a different plea or fought my case vigorously, as my priority at the time was staying in this country legally."

Describing the advice he received from his counsel before he pleaded guilty, Lastico declared as follows: "At no point do I remember my attorneys discussing my immigration status with me or advising me of the specific immigration consequences of my plea. I definitely was never advised that some of my convictions would be aggravated felonies in immigration court and that they would prevent me from applying for most forms of relief in immigration court and nearly guarantee my removal from this country." Lastico also stated that "apart from this case, I have not had any problems with the law in over 30 years here." This was not correct: in 1995, Lastico pleaded guilty to a misdemeanors in two separate matters and was placed on summary probation.

Lastico also filed a declaration from the attorney who represented him at the June 2015 plea hearing. In that declaration, counsel stated that according to his

6

contemporaneous notes, "on August 18, 2015, I advised [Lastico] that if he was not a U.S. citizen, his plea would result in him being deported, denied naturalization, amnesty, and excluded from admission or reentry into the U.S.  I advised him of this when explaining the court's indicated and again when he inquired during the taking of the plea."  Counsel went on to state that he "[did] not recall, nor do I have any notes that suggest, that I differentiated the immigration consequences of each specific charge he would be pleading to," and that "[m]y notes do not suggest, nor do I recall, that I ever used the term 'aggravated felony' or advised [Lastico] of the specific immigration significance of an aggravated felony conviction in removal/deportation proceedings and how an aggravated felony conviction would affect his eligibility for relief in removal/deportation proceedings."

### C. The Court Denies Lastico's Motion

The court heard Lastico's motion on September 8, 2023. The prosecution filed no written opposition, but offered in evidence a certified copy of Lastico's criminal history as well as minute orders from two cases in 1995 in which Lastico pleaded guilty to misdemeanors.  The court took judicial notice of the misdemeanor convictions from 1995 and the accompanying immigration warnings.

After hearing argument, the court denied Lastico's motion. The court first noted Lastico's declaration conflicted with his former counsel's declaration regarding his advice to Lastico at the plea hearing:  "[Lastico] says at no point do I remember my attorney discussing my immigration status with me . . . [defense counsel] in his declaration says he did advise [Lastico]; he didn't advise him in detail about [the] impact of aggravated felonies."

7

The court specifically found that Lastico's declaration, which contradicted the record showing "many admonitions [Lastico] received . . . seems to me to give him a lack of credibility." The court concluded, "I do not find that [Lastico] has proved by a preponderance of the evidence the existence of grounds specified in [the statute], after many admonitions [Lastico] received . . . I find [plea counsel's] declaration to be credible and [Lastico] was advised that he would be deported three times. I didn't see anything in the law that says the attorney is then required to go over each and every charge, and there's no evidence as to whether there was any charge that the People would have offered him to plead to that would not have had these immigration consequences."

The court entered an order denying Lastico's motion on September 8, 2023. Lastico filed a timely notice of appeal.

## DISCUSSION

### A. The Legal Standard

"The Immigration and Nationality Act (INA) renders deportable any alien convicted of an 'aggravated felony' after entering the United States. [Citation.] Such an alien is also ineligible for cancellation of removal, a form of discretionary relief allowing some deportable aliens to remain in the country. [Citation.] Accordingly, removal is a virtual certainty for an alien found to have an aggravated felony conviction, no matter how long he has previously resided here." (*Sessions v. Dimaya* (2018) 584 U.S. 148, 153.) In order to ameliorate these consequences, section 1016.5 requires that, prior to accepting a guilty or no contest plea, the court notify the defendant "that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the

8

United States, or denial of naturalization pursuant to the laws of the United States." (§1016.5, subd. (a).)

Effective January 1, 2017, the Legislature adopted section 1473.7. Section 1473.7, subdivision (a)(1), provides in pertinent part that "[a] person who is no longer in criminal custody may file a motion to vacate a conviction or sentence" that is "legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence." The statute further provides that a court "shall" vacate a conviction or sentence upon a showing, by a preponderance of the evidence, of any such prejudicial error. (*Id.* at subd. (e)(1).) The focus of the inquiry is on the "defendant's own error in . . . not knowing that his plea would subject him to mandatory deportation and permanent exclusion from the United States." (*People v. Camacho* (2019) 32 Cal.App.5th 998, 1009 (*Camacho*).)

**B. Standard of Review**

In *People v. Espinoza* (2023) 14 Cal.5th 311 (*Espinoza*), our Supreme Court held that a party seeking relief under section 1473.7 must satisfy a two-part test. "The defendant must first show that he did not meaningfully understand the immigration consequences of his plea." (*Id.* at p. 319.) A party who establishes his lack of understanding of the consequences of his plea must then show that his misunderstanding constituted prejudicial error, which " 'means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences.' " (*Ibid.*; citing *People v. Vivar* (2021) 11 Cal.5th 510, 529 (*Vivar*).)

9

On appeal, we apply independent review to evaluate whether Lastico understood the consequences of his guilty pleas. (*Espinoza*, *supra,* 14 Cal.5th at p. 319.)  If we find he proved lack of understanding, we then independently review whether his lack of understanding constituted prejudicial error, "weigh[ing] all relevant circumstances, with no single factor being dispositive in our consideration of the totality." (*Espinoza*, *supra,* 14 Cal.5th at p. 321.)  "When courts engage in independent review, they should be mindful that ' "[i]ndependent review is *not* the equivalent of de novo review . . . ." ' [Citation.]  An appellate court may not simply second-guess factual findings that are based on the trial court's own observations." (*Vivar, supra,* 11 Cal.5th at p. 527.)  Instead, "[w]hen courts engage in independent review, they must give deference to the trial court's factual determinations if they are based on ' " 'the credibility of witnesses the [superior court] heard and observed.' " ' " (*Espinoza, supra*, 14 Cal.5th at p. 320; *Vivar, supra*, 11 Cal.5th at pp. 527-528 ["In section 1473.7 proceedings, appellate courts should . . . give particular deference to factual findings based on the trial court's personal observations of witnesses"].)

In the trial court Lastico had the burden to prove lack of understanding by a preponderance of the evidence.  (§ 1473.7, subd. (e)(1).)  Lastico's decision to plead guilty is " ' "viewed at the time of the offer. . . ." ' " (*People v. Martinez* (2013) 57 Cal.4th 555, 564.)  We require objective, corroborating evidence supporting the moving party's allegation he did not understand the consequences of a guilty plea because a defendant's uncorroborated declaration "is suspect by itself." (*People v. Cruz-Lopez* (2018) 27 Cal.App.5th 212, 224.)

10

### C. Lastico Understood the Immigration Consequences of His Plea

The trial court addressed only the first part of the test set out in *Espinoza*, rejecting Lastico's assertion he did not understand the immigration consequences of his guilty pleas. We affirm the trial court's order denying relief. Applying the independent review standard, we agree with the trial court that Lastico was advised of the immigration consequences of his guilty pleas, and understood those consequences when he pleaded guilty to the charges set out in the amended information. Because Lastico has not met his burden to show he did not understand the consequences of his guilty pleas, we need not address Lastico's contention that his error was prejudicial.

### 1. Lastico was duly warned by his counsel and by the prosecutor

Lastico's counsel conceded below that Lastico "was advised under section 1016.5 of the California Penal Code of the possible immigration consequences of his pleas." On appeal, however, Lastico argues he "was not aware of [the] serious, mandatory consequences when he pleaded guilty." The record confirms Lastico was advised in unambiguous terms he would be deported and excluded from the United States if he accepted the plea deal being offered.

Lastico's declaration in support of his motion for relief was equivocal at best, averring only that he "does not remember" being advised of the immigration consequences of pleading guilty. " '[A] failure to remember aspects of the subject of the testimony' " presents a question ' "of credibility for resolution by the trier of fact.' " (*People v. Lopez* (2018) 5 Cal.5th 339, 352.) Apart from being equivocal, Lastico's declaration is plainly at

11

odds with the record. The reporter's transcript from 2015 shows that Lastico's counsel advised him of the immigration consequences before beginning the plea hearing, and a second time during the hearing. Lastico's counsel stated in his declaration that he advised Lastico that "his plea would result in him being deported, denied naturalization, amnesty, and excluded from admission or reentry into the U.S." Lastico's counsel also showed him a form spelling out the consequences of a guilty plea, including that Lastico "would" be deported from the United States. Lastico was specifically told by the prosecutor that his guilty plea "will result" in deportation and exclusion from the United States. The trial court noted Lastico's declaration departed from "his own admissions . . . which seems to me to give him a lack of credibility." This credibility finding, based in part on the trial court's observing Lastico when he pleaded guilty in 2015, is entitled to "particular deference." (*Vivar, supra*, 11 Cal.5th at pp. 527-528; see also *Espinoza, supra*, 14 Cal.5th at p. 320.)

As he did below, Lastico argues that the issue is not whether he was advised he would be deported, but rather that he did not "meaningfully understand the consequences of his actual plea" because he was not specifically advised "that two of the charges were aggravated felonies barring him from almost all discretionary relief, mandating his deportation and permanent exclusion from the United States." The Court of Appeal rejected this contention in *People v. Tapia* (2018) 26 Cal.App.5th 942. There, the court held "[w]hether the offense to which Tapia pled is classified by the federal government as an aggravated felony is not a consequence of the plea; it is simply a legal classification for certain offenses. The consequence of the plea is that the charge

12

to which Tapia pled would lead to his deportation and would bar him from reentry if he left the United States, and Tapia was advised of these consequences." (*Id.* at p. 953.)

### 2. No evidence corroborates Lastico's contention he would have refused a plea bargain because his immigration status was his paramount concern

" 'Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences.' " (*People v. Ogunmowo* (2018) 23 Cal.App.5th 67, 78.) Our independent view of the record discloses no evidence corroborating Lastico's assertion that his guilty pleas were the result of a misunderstanding. Lastico insists that, had he been properly advised, he would have gone to trial rather than enter a guilty plea and be deported. Nothing in the record, however, shows Lastico prioritized his immigration status over other concerns, such as avoiding jail confinement. At no time during the 2015 plea hearing did Lastico express concern over his immigration status. Rather, Lastico only expressed concern for the amount of time he would be confined were he to accept a plea deal. From his silence in the face of repeated warnings, both from his own counsel and from the prosecutor, that a guilty plea would result in his being deported and excluded from re-entry, we lack any corroborating evidence to counter the inference that Lastico understood the immigration consequences of his plea deal, and accepted those consequences as the best means to avoid a lengthy jail sentence.

The trial court stated that the split sentence Lastico accepted was the best deal the court would give, and Lastico later

acknowledged the prosecutor's representation that no "immigration-neutral" plea deal would be offered.[6]  The trial court informed Lastico he was facing up to nine years in state prison if convicted, so the deal he accepted – two years in county jail less 237 days credit for time served – offered obvious advantages to a defendant whose expressed concern was with serving as little time as possible.  "A defendant without any viable defense . . . will rarely be able to show prejudice from accepting a guilty plea that offers him a better resolution than would be likely after trial" because the defendant "will be highly likely to lose at trial" and therefore "highly likely" to accept a plea.  (*Lee v. United States* (2017) 582 U.S. 357, 367.)

### D. Lastico's Circumstances Are Distinguishable From Cases Where Relief Was Granted

Lastico cites a number of cases where motions similar to his were granted, arguing we are bound by the holdings in those cases.  Instead, we believe the cases Lastico relies on are factually distinguishable.  For example, the defendant in *Espinoza* pleaded no contest to various felonies based on the assurance of his counsel's assistant that "if he pleaded no contest, 'everything was going to be fine.' " (*Espinoza, supra*, 14 Cal.5th

---

[6]    Lastico asserts the failure to offer an immigration-neutral plea deal violates public policy.  This is inaccurate.  Section 1016.5, subdivision (d), expresses "the intent of the Legislature" that a defendant be given "an appropriate warning of the special consequences for such a defendant which may result from" a guilty or no contest plea, and that a defendant who is not aware of those consequences shall be given "a reasonable amount of time to negotiate with the prosecuting agency" before entering a plea.  Nothing in the statute requires the prosecutor to extend an immigration-neutral plea offer to any defendant.

14

at p. 318.) Espinoza's counsel never advised him about the consequences of pleading no contest. The trial court advised Espinoza that conviction "may" have adverse immigration consequences. (*Ibid*.) In *People v. Manzanilla* (2022) 80 Cal.App.5th 891, the defendant's counsel advised him that he would have an immigration hearing following his no contest plea, but not that he was virtually certain to be deported. (*Id.* at p. 898.) Defendant initialed a form stating he understood that "I must expect my plea of guilty or no contest will result in my deportation," but explained that because of a visual impairment he was unable to read the form, and only signed it based on his counsel's assurance that "it covered everything we had already talked about." (*Id.* at pp. 899, 901.) *Camacho,* is readily distinguishable on its facts. There, defense counsel testified he advised his client that the charge *could* subject him to deportation, that he could protect his client by moving to expunge his record and reduce the charge to a misdemeanor, that he misunderstood the potential immigration consequences and the effect of expungement or reductions of felonies in immigration cases; and that he did not explore possible alternatives to pleading to an aggravated felony. (*Camacho, supra,* 32 Cal.App.5th at p. 1003.) In contrast to Lastico, the trial court in *Camacho* made "no express or implied credibility determination for or against defendant." (*Id.* at p. 1009.)[7] Finally, in *People v.*

---

[7] In *Camacho*, the defendant was similarly advised that his plea " 'will result' " in adverse immigration consequences, but we held there that defendant had presented "sufficient evidence of his lack of understanding such that the court's advisement cannot be taken as irrebuttable proof that defendant likely would have entered his plea notwithstanding those consequences."

*Rodriguez* (2021) 60 Cal.App.5th 995, 1000-1001, 1005, the defendant was blindsided when the trial court entered a sentence longer than what was represented by defense counsel, elevating his conviction to an aggravated felony, which carried different immigration consequences than the plea arrangement he had discussed with his counsel.

Lastico's circumstances are materially different from any of the foregoing cases. He received the sentence indicated by the court in exchange for his guilty plea. Prior to entering that plea, Lastico was advised by his counsel that he would be deported, reviewed a form stating that he would be deported, and was advised by the prosecutor that he would be deported. When, in response to a question by the court, Lastico denied having discussed immigration consequences with his counsel, the hearing was recessed while Lastico conferred with counsel, after which he confirmed he had been advised of the immigration consequences. Lastico has not cited a language barrier[8] or other difficulty that would account for his not understanding the plain meaning of the warnings he received. There is neither a credible declaration by Lastico establishing he did not understand the consequences of a guilty plea at the time he did so, nor any other objective evidence that he did not understand those consequences.

_____

(*Camacho, supra*, 32 Cal.App.5th at p. 1011, fn. 8.) Here, by contrast, Lastico has not presented credible evidence of his lack of understanding.

[8] A Tagalog interpreter was present at Lastico's trial/plea hearing, but there is no indication the interpreter participated. Lastico never contended he does not understand English.

16

We believe Lastico's case is closer to the facts of *People v. Abdelsalam* (2022) 73 Cal.App.5th 654, where the court affirmed an order denying relief to a defendant who contended that his attorney did not explain the immigration consequences of his plea and that he would not have accepted it if he had been advised. Abdelsalam's attorney told the court at the plea hearing that she had explained the immigration consequences of a plea with her client, contradicting his declaration to the contrary. Affirming the order denying relief, the Court of Appeal stated, "During the taking of the plea, [the defendant] was told orally and in writing that he *will* be deported. Not that he 'might' be deported, or that he 'could' be deported. [The defendant's] argument that he was not aware of the mandatory nature of the deportation flies in the face of the mandatory language used to describe the likelihood of deportation. [The defendant] is not entitled to simply ignore the admonitions he was given about the consequences of the plea, and argue that he unilaterally assumed he would be treated in direct contravention of what he was advised orally and in writing." (*Id.* at p. 663.)

## DISPOSITION

We affirm the order denying Lastico's motion to vacate his conviction under section 1473.7.

RICHARDSON, J.

We concur:

LUI, P. J.        CHAVEZ, J.

17